JOSEPH P. GALLAGHER, PLAINTIFF, v. MAYOR AND COUNCIL
OF THE TOWN OF IRVINGTON, DEFENDANT.

Superior Court of New Jersey
Law Division Essex County

Decided March 9, 1982.

*Susan S. Singer* and *Henry Furst* for plaintiff (*Brown, Brown & Furst*, attorneys).

*Henry E. Rzemieniewski* for defendant Mayor of the Town of Irvington.

*Samuel J. Zucker* for Municipal Council of the Town of Irvington.

*William E. Graves* for defendant-intervenor (*Petit-Clair & Graves*, attorneys).

BAIME, J. S. C. (temporarily assigned).

This case presents novel questions pertaining to the construction of *N.J.S.A.* 40A:14–9.4. That statute confers a preference with respect to a resident who achieves "the same final average score" as a nonresident in a promotional examination for appointment to a position in a municipal fire department. More specifically, the statute provides that a resident must be appointed in the event his test score equals that of a nonresident. At issue is whether dual residency satisfies the statutory requisite. Also in dispute is whether a resident whose test score exceeds that of a nonresident is entitled to a preference under the statute.

Plaintiff instituted this action in lieu of prerogative writs seeking to vacate the appointment of Thomas McGotty as fire chief in the Town of Irvington. Due to McGotty's obvious interest in the outcome of these proceedings, his application for intervention was granted. See *R.* 4:33–1 and 2. Except with respect to questions regarding defendant-intervenor's residency, the facts are not in dispute and are essentially a matter of public record. Plaintiff has resided in Irvington for most of his life and has served in a variety of capacities in that municipality's fire department for about 24 years. In the latter part of 1980 plaintiff, McGotty and three other individuals were administered a Civil Service promotional examination for the position of fire chief. It is uncontroverted that plaintiff's test score

substantially surpassed that of all other eligible individuals. McGotty ranked third in the examination. On March 23, 1981 the mayor appointed McGotty to the position of fire chief. Shortly thereafter the governing body confirmed the appointment. This action followed.

The facts pertaining to defendant-intervenor's residence were hotly contested. The record reveals that he and his wife own a single-family home in Edison. Two of the McGottys' children also reside in the dwelling; a third lives at the college she is presently attending. The McGottys' federal income tax returns list their home address as Edison. Further, ownership registrations with respect to defendant-intervenor's two automobiles bear that address. The McGottys have joint checking and savings accounts listing Edison as their residence. In point of fact, the veterans' preference claim form which accompanied McGotty's application for the position of fire chief and which was submitted to the Department of Civil Service sets forth the Edison address as his residence. Several other documents, including fire department "declaration of residence" forms, personnel roster lists, payroll sheets and driver's licenses all bore the Edison address until shortly after defendant-intervenor's appointment. At that time these documents were altered at McGotty's request to reflect an Irvington address.

Although McGotty testified that he resided with his mother and sister on a part-time basis in a two-family house in Irvington, the evidence presented in that regard was extremely tenuous. It is undisputed that he does not pay rent or contribute to the financial upkeep of the house. He is not listed as the owner in the deed. To be sure, defendant-intervenor occasionally sleeps overnight at the Irvington address, maintains a minimal wardrobe there and is registered to vote from that residence. Nevertheless, there are no marital difficulties between him and his wife and it is abundantly clear that his family, social and religious relationships center about Edison. In sum, the relatively few indicia of residence in Irvington existing in this case pale within the context of the overwhelming evidence presented

that McGotty regards Edison as his home—the place where his family lives.

## I

Although the present statutory scheme is not without its ambiguities, the legislative history is somewhat illuminating. Our statutes have long conferred discretion upon the appointing authority to select one of the three individuals achieving the highest examination scores. *N.J.S.A.* 11:22–16. In essence, the statutory "rule of three" authorizes the employing authority to appoint "one of the three ... certified [as] standing highest" among the candidates for the position. *Id.* The rule, "though effectuating a fundamental legislative concern in preserving merit standards in public employment, was not conceived of as an immutable or total bar to the application of other important criteria" in the governmental selection process. *Terry v. Mercer Cty. Freeholder Bd.,* 86 *N.J.* 141, 150 (1981). The discretion conferred has been limited in cases in which the Legislature has granted preferences.[1]

Of course, questions pertaining to the applicability of preferences arise only following examination of prospective employees who qualify. Before being permitted to take the examination, applicants must satisfy various conditions. Perhaps the most controversial condition of many types of governmental employment pertains to residence. Prior to 1972 all office-holders were required to reside in the municipality in which they were employed. *N.J.S.A.* 40:11–1. The statutory scheme further provided that "[w]henever an officer of a municipality cease[d] to be a bona fide resident," a vacancy was to be declared. *N.J.S.A.* 40:46–14. In *Kennedy v. Newark,* 29 *N.J.* 178 (1958), our

---

[1]For example, our statutes have historically granted preferences to veterans. *See Ballou v. Civil Service Dep't,* 75 *N.J.* 365 (1978); *Lavits v. Civil Service Comm'n,* 94 *N.J.Super.* 260 (App.Div.1967). In this case the veteran's preference is not a factor. It is uncontroverted that both plaintiff and McGotty are veterans.

Supreme Court decided that a residence requirement for governmental employment, whether at the state, county or municipal level, was constitutional. The court concluded that the Legislature could rationally find "the public interest is advanced by residence within the political unit which provides the pay." *Id.* at 183. More specifically, residence may well "supply a stake or incentive for better performance in office or employment and as well advance the economy of the locality which yields the tax revenues." *Id.* at 184. The court further noted that residence can be relevant with respect to office-holders who may be called upon to act in emergencies. *Id.* In *Mercadante v. Paterson*, 111 *N.J.Super.* 35 (Ch.Div.1970), aff'd 58 *N.J.* 112 (1971), Justice (then Judge) Mountain held that the statutory scheme was applicable to police officers and members of municipal fire departments and, therefore, residence constituted a mandatory condition of continued employment. Significantly, the court rejected the argument that dual residency satisfied the statutory requirement. Since the legislative design was to foster the public interest as defined in *Kennedy v. Newark, supra,* the court found that "no casual residence was intended but rather a real and principal [one], in short, domicile." *Id.* at 40. It was held that "nothing less would create that identity with the community" the statute was designed to advance. *Id.* *See,* also, *Krzewinski v. Kugler*, 338 *F.Supp.* 492 (D.N.J.1972); *Smith v. Newark*, 128 *N.J.Super.* 417 (Law Div.1974), aff'd 136 *N.J.Super.* 107 (App.Div.1975).

In 1972 the Legislature enacted our present statutory scheme. *N.J.S.A.* 40A:14–9.1 currently provides that "[n]o municipality shall pass any ordinance, resolution ... rule or order making residency ... a condition of employment or promotion" with respect to members of the fire department. This legislative mandate is buttressed by *N.J.S.A.* 40A:14–9.2 which invalidates Civil Service laws making residence a condition of employment. These statutes do not totally eradicate the policy permitting municipalities to consider residence with respect to appoint-

ments and promotions. As noted previously, *N.J.S.A.* 40A:14–9.4 specifically addresses that question by providing a preference to a resident who achieves the "same final average score" as a nonresident.

In enacting these statutes the Legislature declared in an accompanying statement that residency requirements have "become increasingly difficult to enforce" and have reduced the pool of qualified applicants. Statement of the Judiciary Committee, Senate Bill No. 452. It is clear that the statutory scheme ultimately adopted was designed to promote merit in appointments, as evidenced by objective Civil Service test scores. The Legislature did not, however, totally discount the public policy goals enunciated in *Kennedy v. Newark, supra, i.e.,* the incentive for better performance by virtue of the employee having a stake in the quality of life of the community in which he resides. Rather, the residence preference was designed to promote that objective. The statutory preference does not offend the goal of "guarding against considerations of politics, personal favoritism or partisanship in any form." *Smith v. Newark, supra* at 431. Rather, the statutory scheme recognizes that residency in the municipality may well promote better performance in office. Where merit is equal, residence remains an important policy consideration in promoting job performance.

## II

It is against this backdrop that defendant's arguments must be considered. Defendant first contends that defendant-intervenor maintains dual residences in Edison and Irvington and, therefore, plaintiff cannot validly claim the statutory preference. This argument is grounded upon the premise that repeal of statutes requiring residence as a condition of employment constitutes a legislative rejection of judicial decisions such as *Mercadante v. Paterson, supra,* equating that term with domicile. Stated somewhat differently, defendant contends that the

amendments enacted in 1972 evidence a legislative design to distinguish between residence and domicile.

So posited, defendant's argument contravenes well settled principles of statutory construction and must thus be rejected. It is axiomatic that words. or phrases in a statutory provision which were employed in a prior enactment regarding the same subject matter should be construed in accordance with judicial decisions interpreting the previous legislation. See, *e.g.*, *Crawford, Construction of Statutes* § 229 (1940); 2A *Sutherland, Statutory Construction* § 5120 (4 ed. Sands 1973). Stated another way, "words which have received judicial construction will generally be deemed to have been used by the Legislature in the sense that has been ascribed to them." *Clark v. Degnan*, 163 *N.J.Super.* 344, 372 (Law Div.1978). *See, also, Safeway Trails, Inc. v. Furman*, 76 *N.J.Super.* 90, 101 (Law Div.1962), rev'd 41 *N.J.* 467 (1954), app. dism. and *cert.* den. 379 *U.S.* 14, 85 *S.Ct.* 144, 13 *L.Ed.2d* 84 (1964). That principle has particular applicability where, as here, the policy goals sought to be advanced by the Legislature in enacting the prior statute retain their efficacy. It bears repeating in that regard that the legislative objectives which supported enactment of the prior legislation mandating residency as a condition of public employment are equally valid at present. The compelling state interests identified in *Kennedy v. Newark, supra*, are equally present today notwithstanding legislative repeal of statutes conditioning public employment on residence within the municipality. The motivation to properly perform one's official responsibilities because they directly impact upon the community in which he resides supports the statutory preference established by the Legislature. To be sure, residence is no longer a condition of public employment. However, the statute grants a preference to those who are presumed to have a direct stake in the welfare of the community. Only domicile—the place of one's abode where one has the present intention of remaining—comports with the policy considerations underlying enactment of the statutory preference. Hence, the word "residence," as it is

employed in *N.J.S.A.* 40A:14–9.4, is equivalent to the concept of domicile.[2]

■ It is plain that Edison is municipal-intervenor's domicile. Among the factors considered in this respect are the physical characteristics of each residence, "the time spent and the things done in each place, the other persons found there, the person's mental attitude toward each address, and his general state of mind." See *Mercadante v. Paterson, supra* 111 *N.J.Super.* at 39. Both from the perspective of defendant-intervenor's subjective state of mind and the objective tests employed in determining domicile, it is clear that he does not qualify as a resident under the statute. See, *Restatement, Conflict of Laws,* § 9e.

### III

Equally devoid of merit is defendant's argument that the statute must be construed as a "tie breaker" and, therefore, is inapplicable in cases in which the resident's examination score exceeds that of a nonresident. In support of this contention defendant points to the statutory language which expressly grants a preference only where the resident and nonresident achieve "the same final average score." *N.J.S.A.* 40A:14–9.4. The statute is totally silent regarding cases in which the resident's examination rank surpasses that of the nonresident. Defendant concedes that the statute makes little sense if construed to be inapplicable in cases in which the resident's test score

---

[2]This conclusion draws further support from other related statutes which equate residence with domicile. For example, *N.J.S.A.* 40A:9–1.3 provides that municipal governing bodies may enact ordinances or resolutions mandating residence as a condition of public employment with respect to positions other than in the police or fire department. By its very terms the statute defines a bona fide resident as "a person having a permanent domicile within the local unit." These statutes must be read *in pari materia. Clifton v. Passaic Cty. Bd. of Tax.,* 28 *N.J.* 411 (1959); *Giles v. Gassert,* 23 *N.J.* 22 (1957); *State v. Brown,* 22 *N.J.* 405 (1956); *Garden State Farms, Inc. v. Bay,* 136 *N.J.Super.* 1 (Law Div.1975), rev'd 146 *N.J.Super.* 438 (App.Div.1977), aff'd 77 *N.J.* 439 (1978); *Greggio v. Orange,* 69 *N.J.Super.* 453 (Law Div.1961), aff'd 37 *N.J.* 462 (1962).

exceeds that of the nonresident. However, it is argued that the statutory preference was the result of a legislative compromise. Defendant further contends that it is not the role of the judiciary to correct what it might perceive to be a legislative error or omission.

Defendant seeks to cast the question presented in terms of the tension between the policies of "judicial activism" and "judicial self-restraint." However, the issue cannot be so narrowly defined. Concededly, defendant's argument has some superficial appeal, particularly with respect to ardent advocates of judicial self-restraint. Quite plainly, it is incumbent upon the judiciary to interpret and enforce the legislative will as written and not in accordance with some unexpressed and ephemeral intention. *White v. North Bergen*, 77 *N.J.* 538, 554–55 (1978); *Vornado, Inc. v. Hyland*, 77 *N.J.* 347, 354–55 (1978); *Burton v. Sills*, 53 *N.J.* 86, 95 (1968). The judiciary is not at liberty to indulge in the presumption that the Legislature intended something more than that which was written into law. As frequently noted by our Supreme Court, "the prudence, wisdom, good sense or otherwise" of a legislative action are not questions for the judiciary to resolve. *Burton v. Sills, supra* at 95. In short, the courts "do not sit as a superlegislature." *New Jersey Ass'n on Corrections v. Lan*, 80 *N.J.* 199, 211 (1979).

Nonetheless, statutory construction is not an exact science or a sterile process. In determining the legislative intent, the courts are not enslaved by the specific wording employed. "Where a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter." *New Jersey Builders, Owners and Managers Ass'n v. Blair*, 60 *N.J.* 330, 338 (1972). "When all is said and done, the matter of statutory construction ... will not justly turn on literalisms, technisms or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation." *Jersey City Chap. Prop. Owner's, etc. v. Jersey City*, 55 *N.J.* 86, 100 (1969).

Here, the legislative goal is manifest. The objective of the statute was to accord a preference to a resident over an equally or less qualified nonresident. In sum, the legislation constitutes a resolution of competing social values. Residence presumably assures proper performance of official functions by virtue of the applicant having a direct stake in the quality of community life. So too, job performance is enhanced by ensuring that the applicant having the highest objective test score is ultimately selected. Consequently, *N.J.S.A.* 40A:14–9.4 must be construed to grant a preference to a resident whose test score equals or exceeds that of a nonresident. So construed, the appointment of defendant-intervenor to the position of fire chief must be vacated.