With respect to the affidavit in *Mayfield, supra,* we observed:

In summary, what is beyond legitimate dispute with respect to Dr. Bernardo's affidavit of merit is this. It is a document that in form meets the requirement of the statute that an affidavit be the document provided. *It was not created after the expiration of the statutory time but existed from the outset of the case. It was timely disclosed in the sense of being included in the public record of the case, though not in the sense of being physically delivered to defense counsel. It was physically provided to defense counsel the day after plaintiff's counsel learned of the mistaken failure to provide it initially.* It shows the alleged underlying merits of the action to the same extent as would a document whose service on defense counsel was literally made as directed by the statute.

[335 *N.J.Super.* at 208–09, 762 *A.*2d 237.] (Emphasis added.)

The affidavit in this case does not share the characteristics of the *Mayfield* affidavit that we have highlighted in the foregoing passage and in our view its shortcomings, taken together, are sufficient to remove it from the ambit of the *Mayfield* holding. In short, there was no substantial compliance and the complaint was properly dismissed pursuant to the Affidavit of Merit Statute.

The order appealed from is affirmed.

---

768 A.2d 814

JAMES R. MURPHY, PLAINTIFF–RESPONDENT, v. MAYOR GERALD LUONGO AND/OR TOWNSHIP OF WASHINGTON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 6, 2000—Decided March 20, 2001.

Before Judges KEEFE, EICHEN and STEINBERG.

*Christopher M. Farella* argued the cause for appellant, (*Genova, Burns & Vernoia,* attorneys; *Mr. Farella,* of counsel and on the brief).

*Bruce C. Hasbrouck* argued the cause for respondent, (*Hasbrouck & Uliase*, attorneys; *Mr. Hasbrouck*, on the brief).

*Porzio, Bromberg & Newman*, attorneys for amicus curiae New Jersey State Association of Chiefs of Police, (*Thomas J. Rattay*, on the brief; *Vito A. Gagliardi, Jr.*, of counsel).

*Higgins, Long & Bonfiglio*, attorneys for amicus curiae Township Council of Washington Township, (*Howard C. Long, Jr.*, on the brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

Defendant Gerald Luongo, who at the time relevant to this appeal was the mayor of the Township of Washington, appeals from the entry of summary judgment holding, in essence, that his appointment of an interim Chief of Police (Interim Chief) was void. The judgment under review has been stayed pending appeal.

The material facts are undisputed. The Township of Washington has a form of government established in accordance with the Faulkner Act. *N.J.S.A.* 40:69A–26 to –210. The Washington Township Code (Township Code) provides in §§ 2–9.2 and 2–9.3 that the Director of Public Safety (Director) shall also be the Chief of Police.

On November 23, 1999, the Director/Chief of Police, Wilbert Sowney, announced his retirement. His resignation as Director/Chief of Police was effective on December 1, 1999. When he retired both positions were left vacant. On November 30, 1999, Mayor Luongo appointed Edmund Giordano the Interim Chief, effective December 1, 1999. Giordano had served in the Washington Township Police Department (Police Department) for over twenty years and was promoted to Interim Chief from the rank of corporal. No appointment was made to the position of Director.

At the time, plaintiff, James R. Murphy, was the Deputy Chief of Police (Deputy Chief). He had served in that position since

1995, having succeeded Frank J. Toma. Toma had served in that position since August 4, 1983. According to the record, the Washington Township Council (Township Council) appointed Toma as Deputy Chief.

Following the appointment of Giordano as Interim Chief, Mayor Luongo eliminated the position of Deputy Chief. Murphy was informed he would be returned to the rank of lieutenant. Within two weeks, Murphy's pay was reinstated at the level of Deputy Chief, though he remained a lieutenant. Presumably, in response to the actions taken by the Mayor, the Township Council passed a resolution on December 16, 1999, stating:

NOW THEREFORE, BE IT RESOLVED by Washington Township Council on the 16th day of December, 1999 that Council recognizes that under Statute, Code, and policy, the Deputy Chief of Police is the office and person to act in the absence of the Chief of Police negating the necessity for any appointment by either Mayor or Council for an "interim" or "acting" Chief.

BE IT FURTHER RESOLVED that without conceding that the Mayor or Council has the power or ability to appoint an "interim" or "acting" Chief, that any consent, actual, express or implied, is specifically withheld and denied by Council as to any attempted action by the Mayor to appoint an "interim" or "acting" Chief of Police by the Mayor.

BE IT FURTHER RESOLVED that any personnel or department changes made by any person under the auspices of being the "acting" or "interim" Chief as erroneously appointed by the Mayor are hereby determined and declared to be null and void as if never made.

Murphy filed a complaint on December 23, 1999, in the Law Division, alleging he was wrongfully denied his position, salary, and benefits as Deputy Chief in violation of the Fifth and Fourteenth Amendments of the United States Constitution and in violation of 42 *U.S.C.* § 1983 (count one); that Murphy's liberty interest in his good name and good standing in the community were infringed upon by being deprived of the opportunity to confront the charges against him (count two); that removal from the position of Deputy Chief was done in a manner contrary to *N.J.S.A.* 40A:14–128 and *N.J.S.A.* 40A:14–147 in that the Township Council did not provide advice and consent, and the action was done with political motivation and otherwise in bad faith (count three); and the Mayor did not have the required advice and

consent of the Township Council to appoint an Interim Chief (count four).

Mayor Luongo moved for summary judgment on counts three and four. The motion judge held that the position of Deputy Chief was not a position provided for by the Police Department Police Manual (Police Manual) to exist within the Police Department, and, therefore, the Mayor's elimination of the position was proper. The judge also ruled that the Police Manual did not provide for the position of an Interim Chief, and, thus, Mayor Luongo could not appoint a person to a position that did not exist.

The motion judge relied heavily upon the Police Manual in making his determination. The Police Manual was prepared in 1989. It was signed by the Chief of Police, the Township Council President, the members of the Township Council, and the Mayor. However, it was never adopted by ordinance, and, therefore, made a part of the Township Code.

After Mayor Luongo's motion for reconsideration was denied, we granted his motion for leave to appeal and stayed the Law Division order. We also invited amici curiae participation by the Attorney General of the State of New Jersey, the New Jersey State League of Municipalities, the Township Council, and the New Jersey State Association of Chiefs of Police. Only the Township Council and the New Jersey State Association of Chiefs of Police filed amicus curiae briefs.

Plaintiff Murphy did not file a motion for leave to cross-appeal, thus leaving in place the Law Division's holding that the position of Deputy Chief was not authorized by law and plaintiff was properly removed from that position. In light of plaintiff's decision not to cross-appeal, the remaining counts of his complaint have been mooted since they were dependent on his status as a properly authorized Deputy Chief. Therefore, what originally was presented to us as a motion for leave to appeal from an interlocutory order of the Law Division has become an appeal from a final order. Further, while it is clear that the Township Council's legal position was contrary to Mayor Luongo's position with respect to

his authority to make an interim appointment, as evidenced by the December 16 resolution, the Township Council did not seek to intervene in the suit brought by plaintiff and participates in this appeal solely in the position of amicus curiae. Accordingly, at the time of oral argument before us, the only justiciable controversy between the actual parties to the litigation was whether the trial court erred in holding that Mayor Luongo lacked the authority to appoint an Interim Chief, and, more specifically, whether Giordano properly held that position.

At oral argument, we were informed that Mayor Luongo had not been reelected and that the political constituency of the Township Council had also changed as a result of the November election. We have also been informed, since oral argument, that Giordano has been removed from his position as Interim Chief and the current Mayor has appointed a different Interim Chief. Accordingly, the issue has not been rendered moot.

■ We begin our discussion by observing that the motion judge placed undue emphasis on the Police Manual. Because it was not adopted by ordinance, it was not binding on the Mayor. Thus, it cannot be a source of authority that either confirms or detracts from Mayor Luongo's power to make the interim appointment. In any event, our examination of the Police Manual reveals that there is no provision that addresses a vacancy in the office of Chief of Police. Rather, the procedures established in the manual contemplate only the temporary absence of a senior officer.

A general statute addresses vacancies in office created by resignation, as occurred here. *N.J.S.A.* 40A:9–12.1 provides:

> The office of any person appointed to a specified term, with or without compensation, by the governing body or chief executive of any local unit, including persons appointed to any board, committee, commission, authority or other agency of one or more local units, shall be deemed vacant:
>
> . . .
>
> b.  Upon the filing by such officer of his written resignation;
>
> . . .
>
> *Whenever any of the above shall occur the appointing authority shall forthwith fill the office for the unexpired term in the manner prescribed by law;* . . .

[ (emphasis added).]

Thus, Mayor Luongo was obligated to make his permanent appointment "forthwith." But such an appointment under statute required the advice and consent of the Township Council. That is so, only because the Director and the Chief of Police were required to be the same person under the Township Code. *See* *N.J.S.A.* 40:69A–43(b) (requiring department heads to be appointed with the advice and consent of the council).

The question, of course, is what is a mayor to do when, as here, the council does not agree with the mayor's nominee. May he appoint that person in the interim until he finds a candidate that is acceptable to the council? The *Senate County and Municipal Government Committee Statement* accompanying *N.J.S.A.* 40A:9–12.1 gives us guidance. It states:

This bill does not alter the right of the appointing authority to remove any such officer for cause, or as may otherwise be provided by law, *or the authority of counties and municipalities to make temporary appointments in certain instances.*

[*Ibid.* (emphasis added).]

The Statement, thus, assumes the existence of authority to make temporary or interim appointments to positions vacated by resignation, as well as by other means. In addition, general language in the Township Code, contemplates the inherent power to make temporary appointments where not otherwise prohibited by law. Specifically, § 2.7 of the Township Code provides:

The mayor shall have such further appointing power with the advice and consent of council, *or otherwise,* as is provided by this chapter or by general law.

[ (emphasis added).]

When construing any legislation, we apply its plain meaning. *Dept. of Law & Public Safety v. Bigham,* 119 *N.J.* 646, 650–51, 575 *A.*2d 868 (1990). Thus, we conclude that the phrase "or otherwise, as is provided by this chapter or by general law," denotes that the Mayor has appointing powers independent of the Township Council's right to provide "advice and consent." Further, as Mayor Luongo notes in his brief, analogous civil service provisions pro-

vide for the temporary appointment of municipal personnel. *See* *N.J.A.C.* 4A:4–1.5, –1.6 and –1.7.

We see no similarity between the facts of this case and those in *Casamasino v. City of Jersey City,* 158 *N.J.* 333, 730 *A.*2d 287 (1999). In that case, a mayor attempted to make a permanent appointment without the advice and consent of the council. *Id.* at at 348–49, 730 *A.*2d 287. Here, Mayor Luongo made an interim appointment. The *Casamasino* Court, however, made an important observation about separation of powers between the executive and legislative branches of municipal government that is apropos in this case. The Court observed:

> Although the separation of powers doctrine applied to federal and state governments is not generally applicable to mayor-council plan of government, "the Faulkner Act plainly envisages some separation of functions between the Council (the legislative body) and the Mayor (the executive)." That separation of functions imposes "certain limits on the Mayor and local council in governing the municipality." *Id.* at 538, 730 *A.*2d 287. Principles of separation of powers are applicable where the Legislature has specifically delegated to the mayor and to the council separate functions in the appointment of officials such as tax assessors. Where one branch of government has been specifically vested with the authority to act in a prescribed manner, neither of the other branches may usurp that authority.
>
> [*Id* at 343, 730 *A.*2d 287 (citations omitted).]

Generally speaking, the power to appoint personnel within the executive branch of government is an executive function. The Legislature can provide that the power be shared with the governing body of the municipality in certain cases. But in such cases there must be a specific enactment that advice and consent is required, otherwise the executive's power to appoint cannot be usurped by legislative interference. That same concept is embodied in *N.J.S.A.* 40:69A–32(b), which provides:

> For the purpose of the construction of all other applicable statutes, unless the explicit terms and context of the statute require a contrary construction, any administrative or executive functions assigned by general law to the governing body shall be exercised by the mayor, and any legislative and investigative functions assigned by general law to the governing body shall be exercised by the council. Those functions shall be exercised pursuant to the procedures set forth in this plan of government, unless other procedures are required by the specific terms of the general law.

We are aware of no statute or legal principles that would prohibit a mayor from making an interim appointment to a department within the executive branch of government. Thus, we conclude Mayor Luongo had the inherent authority to appoint Giordano on an interim basis.

We recognize the Township Council's contention that to permit a mayor to act in this way permits circumvention of its right to give advice and consent because there is no provision in law limiting such appointments. The argument, of course, is two-edged. It could be equally argued by a mayor that a council's refusal to give advice and consent to his designee for permanent appointment interferes with the mayor's ultimate right to make such appointments on a permanent basis for a fixed or unexpired term. The problem is, at its root, a political one for which a court can give no definitive answer. Suffice it to say, however, that where a municipal council believes a mayor has made a temporary appointment that, because of delay, has taken on all of the earmarks of a permanent one, it may seek legal redress on the ground that the mayor has the statutory obligation to make permanent appointments requiring advice and consent "forthwith." *N.J.S.A.* 40A:9–12.1.

■ Finally, Mayor Luongo and amicus curiae State Association of Chiefs of Police argue that there is an inherent conflict between the Township Code provision requiring the Director and the Chief of Police to be the same person and the so-called Chief of Police Bill of Rights legislation, *N.J.S.A.* 40A:14–118. Their argument is justiciable, however, only if a permanent appointment of a Director/Chief of Police had been made. Because that was not done here, the question is moot. Further, the issue was not raised or decided in the trial court, and, thus, is not properly before us. *Nieder v. Royal Indem. Ins. Co.,* 62 *N.J.* 229, 234, 300 *A.2d* 142 (1973). Although the issue is of some public importance, we elect not to decide it in a context where the parties are not truly adversarial on that point.

The judgment under review is reversed to the extent that it holds that the Mayor may not make an interim appointment to the position of Chief of Police.