950 A.2d 253 (2008)
401 N.J. Super. 286
Gregory J. FORESTER, William Kearney, Jr., Joseph A. Harrison, Hoggarth Stephen, Nicholas I. Stewart, Carolyn Nicolai, Peter Wagner, Frank Sasso and James Fouse, Plaintiffs-Respondents,
v.
Douglas H. PALMER and Joseph J. Santiago, Defendants-Appellants, and
The City of Trenton, a municipal corporation of the State of New Jersey, Defendant.
City Council of the City of Trenton, Plaintiff-Respondent,
v.
Douglas H. Palmer, Mayor of the City of Trenton, and Joseph J. Santiago, Police Director of the City of Trenton, Defendants-Appellants.
No. A-3690-07T3.
No. A-3691-07T3.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 2008.
Decided July 9, 2008.
*255 Angelo J. Genova, Livingston, argued the cause for appellant Douglas H. Palmer (Genova, Burns & Vernoia, attorneys; Mr. Genova, of counsel; Celia S. Bosco, Peter J. Cammarano, III and Emily J. Wexler, on the brief).
Salvatore T. Alfano, Bloomfield, argued the cause for appellant Joseph Santiago (Mr. Alfano, of counsel and on the brief).
George T. Dougherty, Eatontown, argued the cause for respondents Gregory J. Forester, William Kearney, Jr., Joseph A. Harrison, Hoggarth Stephen, Nicholas I. Stewart, Carolyn Nicolai, Peter Wagner, Frank Sasso and James Fouse (Katz & Dougherty, attorneys; Mr. Dougherty, on the brief).
David F. Corrigan argued the cause for respondent City Council of the City of Trenton (Mr. Corrigan and Edmund J. Corrigan, on the brief).
Before Judges SKILLMAN, WINKELSTEIN and YANNOTTI.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
Defendant Douglas H. Palmer is the Mayor of the City of Trenton. In February 2003, Mayor Palmer, with the approval of the City Council, appointed defendant Joseph J. Santiago as the Police Director of Trenton.
At the time of his appointment and for some time thereafter, Director Santiago was a resident of Trenton. However, Santiago does not presently reside in Trenton.
A Trenton ordinance adopted in 1972 requires all officers and employees of Trenton to be Trenton residents. Since the adoption of this original residency ordinance, the City Council has adopted a series of amendments modifying its provisions. One such amendment, adopted in 1987, authorizes the mayor to waive the residency requirement based on a certification by the business administrator that a position is vacant and not likely to be filled despite due diligence in recruiting and that the position is of such importance that its continued vacancy is demonstrably detrimental to public health, safety or welfare.
Two actions were brought seeking Santiago's removal from the position of Police Director because he no longer resides in Trenton. One action was brought by a group of Trenton residents and the other by the Trenton City Council. The two actions were consolidated.
The complaint brought by the Trenton residents sought a declaration that the position of Police Director is vacant. The complaint brought by the City Council sought an order requiring Director Santiago to immediately resume residence in Trenton and directing Mayor Palmer to remove Santiago if he refuses to re-establish a Trenton residence. The City Council's complaint also asserted that Mayor Palmer had not waived the residency requirement as to Director Santiago in conformity with the 1987 amendment to the residency ordinance.
Defendants filed counterclaims. Defendants claimed that the Trenton residency ordinance is invalid because it does not comply with the State statute authorizing a municipality to require its officers and *256 employees to be residents. Specifically, defendants asserted that the 1987 amendment to the ordinance, which authorizes the mayor, upon receipt of the previously described certification of the business administrator, to waive the residency requirement, does not conform with N.J.S.A. 40A:9-1.6 and -1.7, which prescribe the waiver provisions that a municipal residency ordinance must contain. In the alternative, defendants claimed that even if the Trenton residency ordinance is valid as applied to other officers and employees, its application to a department head such as the Police Director conflicts with the mayor's appointment powers under the Faulkner Act mayor-council form of government. N.J.S.A. 40:69A-31 to -67.2. In addition, defendants claimed that application of the residency ordinance to the position of Police Director would conflict with N.J.S.A. 40A:14-122.1, which prohibits any municipal residency requirement with respect to members of a police department.
The case was brought before the trial court by orders to show cause. The court rejected defendants' arguments that application of the residency ordinance to the position of Police Director conflicts with the mayor's appointment powers under the mayor-council form of government and with N.J.S.A. 40A:14-122.1. Although the court agreed with defendants' argument that the 1987 amendment to the Trenton residency ordinance does not conform with N.J.S.A. 40A:9-1.6 and -1.7, it concluded that the 1987 amendment is severable from the original 1972 residency ordinance. Based on these conclusions, the court determined that Santiago's continued occupancy of the position of Police Director violates the residency ordinance and that N.J.S.A. 40A:9-11 requires his immediate removal. The court delayed the effective date of its decision thirty days from March 25, 2008 "to provide the Mayor and the City time to effectuate an orderly transition."
Mayor Palmer and Director Santiago filed separate appeals from the judgment memorializing this decision and made emergent motions for a stay pending the outcome of the appeals. We granted a stay and accelerated the appeals on our own motion. We now consolidate the appeals.
On appeal, Mayor Palmer and Director Santiago do not challenge the trial court's conclusion that the 1987 amendment to the residency ordinance failed to conform with the provisions of N.J.S.A. 40A:9-1.6 and 1.7 governing waivers of municipal residency requirements. Furthermore, they have abandoned their argument that the residency ordinance, as applied to the position of Police Director, conflicts with N.J.S.A. 40A:14-122.1. However, they argue that application of the residency ordinance to the position of Police Director conflicts with a mayor's powers under the Faulkner Act mayor-council form of municipal government. They also argue that the trial court erred in concluding that the 1972 residency ordinance remains valid because it is severable from the invalid 1987 amendment.
We reject both of these arguments. Therefore, we conclude that Santiago is subject to the 1972 residency ordinance and that he must vacate the position of Police Director because he is unwilling to reside in Trenton. However, we conclude that the effective date of this decision should be delayed for seventy-five days to allow for an orderly transition in the responsibilities of this position.

I
Under the mayor-council form of municipal government, "`[t]he legislative power of the municipality [is] exercised by the municipal council,' N.J.S.A. 40:69A-36, *257 whereas the executive power of the municipality is allocated to the mayor, N.J.S.A. 40:69A-39." Stomel v. City of Camden, 192 N.J. 137, 149, 927 A.2d 129 (2007). Consequently, the determination whether a power is allocated to the council or the mayor turns on whether that power is legislative or executive.
The power to appoint department heads, subject to confirmation by the council, is an executive function. N.J.S.A. 40:69A-43(b); see Hawthorne PBA Local 200 v. Borough of Hawthorne, 400 N.J.Super. 51, 56, 945 A.2d 736 (App.Div.2008); Murphy v. Luongo, 338 N.J.Super. 260, 266-68, 768 A.2d 814 (App.Div.2001). However, the power to prescribe the qualifications of a department head is a legislative function. See Kennedy v. City of Newark, 29 N.J. 178, 184, 148 A.2d 473 (1959). Therefore, even though the mayor has the power, subject to confirmation by the council, to appoint the police director, the council has the power to prescribe the qualifications of that position.[1]
Moreover, the mayor and council have shared responsibility with respect to the removal of a department head. Under N.J.S.A. 40:69A-43(c), the mayor must give written notice of an intention to remove a department head to the council, which then has twenty days to disapprove the proposed removal by a two-thirds vote. Under N.J.S.A. 40:69A-37(b), the council also may remove municipal officers, including department heads, "for cause" by a two-thirds vote.
There is no inconsistency between these provisions allocating power between the mayor and council for the appointment and removal of a department head in a municipality operating under the mayor-council form of government and N.J.S.A. 40A:9-11, which provides for automatic removal of any municipal officer, including a department head, who "cease[s] to be a bona fide resident of the . . . municipality[.]" This automatic removal provision simply implements the legislatively prescribed qualification that any municipal officer must be a resident. It is similar in this respect to a statute that provides for automatic forfeiture of public office upon conviction of a crime. See N.J.S.A. 2C:51-2; State v. Ercolano, 335 N.J.Super. 236, 243, 762 A.2d 259 (App.Div.2000), certif. denied, 167 N.J. 635, 772 A.2d 937 (2001). In both situations, the Legislature has directed that the occurrence of a specific event-in a forfeiture case, conviction of a crime, and in this case, non-residency in the municipality in which the officer serves-shall automatically require removal of the official and therefore the normal statutory procedures for removal for cause need not be followed.

II
We now turn to defendants' argument that the 1987 amendment is not severable from Trenton's original residency ordinance because severance would leave standing an ordinance that violates State *258 requirements. According to defendants' argument, the entire residency ordinance must be struck, and Trenton cannot require its officers and employees to be residents unless it adopts a new residency ordinance in full conformity with the State statute. To assess this argument, it is necessary to outline the history of the Trenton residency ordinance and the State statute authorizing such municipal ordinances.
In 1971, a statute was enacted that required all municipal officers, except those deemed exempt, to be residents of the municipality in which they serve. L. 1971, c. 200. This statute, which was codified as N.J.S.A. 40A:9-1, contained no provision for waiver of the residency requirement.
In 1972, Trenton voters adopted by referendum an ordinance requiring all Trenton officers and employees to be residents. This ordinance provided:
All officers and employees of the City of Trenton, New Jersey, now in the employ of or hereafter to be employed by the City of Trenton, are hereby required as a condition of their continued employment to have a place of abode in the City of Trenton and to be bona fide residents therein.
A bona fide resident for the purpose of this Ordinance is a person having a permanent domicile within the City of Trenton.
Failure of any officers or employees to comply with this Ordinance, except when otherwise permitted by law, shall be cause for removal or discharge from the City's service or employment.
In 1978, the Legislature repealed N.J.S.A. 40A:9-1 and replaced it with N.J.S.A. 40A:9-1.3 to -1.10. N.J.S.A. 40A:9-1.3 authorizes municipalities to pass ordinances or regulations requiring officers and employees to be residents of the municipality, subject to the requirements of the remaining sections of the legislation. Among those requirements are provisions mandating waivers of the residency requirement if qualified residents are unavailable to fill a position, N.J.S.A. 40A:9-1.6, or the "position[ ] . . . requir[es] special talents or skills[,]" N.J.S.A. 40A:9-1.7.
However, the 1978 legislation included a grandfather provision, which specifically exempted preexisting residency ordinances from its requirements. This section provides:
The provisions of this act shall apply to all residency requirements adopted on and after the effective date of this act. Nothing herein shall be construed as to alter, abrogate, repeal or otherwise affect any residency requirement in effect in any local unit by ordinance or resolution, or rule or regulation of a local unit, on the effective date of this act; provided, however, that any amendment, modification or other change in any such residency requirement shall be subject to all the relevant provisions of this act.

[N.J.S.A. 40A:9-1.9 (emphasis added).]
After enactment of the 1978 legislation, Trenton adopted an ordinance in December 1987 that amended the 1972 residency requirement by adding a waiver provision. Because Mayor Palmer and Director Santiago do not challenge the trial court's conclusion that this amendment failed to conform with the provisions of N.J.S.A. 40A:9-1.6 and -1.7 governing waiver of municipal residency requirements, there is no need to discuss in detail either the 1987 amendment or N.J.S.A. 40A:9-1.6 and -1.7. The only question is whether Trenton's adoption of a waiver provision that has now been declared invalid also results in the invalidation of Trenton's original 1972 residency ordinance and requires Trenton, if it intends to maintain a residency *259 requirement, to adopt a new residency ordinance in full conformity with the 1978 statute. The answer to this question turns on the interpretation of N.J.S.A. 40A:9-1.9.
Defendants argue that when a municipality undertakes to amend a preexisting residency ordinance after enactment of the 1978 legislation governing such ordinances, this triggers operation of the proviso at the end of N.J.S.A. 40A:9-1.9 that "any amendment, modification or other change in any such residency requirement shall be subject to all the relevant provisions of this act." Defendants contend that under this proviso, any municipality that "choose[s] to adopt, amend or modify its residency requirements after the effective date of the 1978 legislation is required to become compliant with the State statutory scheme."[2]
In construing the proviso in N.J.S.A. 40A:9-1.9, which qualifies the grandfather provision preserving the validity of preexisting municipal residency ordinances, as in construing any other statutory provision, our responsibility is to determine the Legislature's intent. Johnson v. Scaccetti, 192 N.J. 256, 270, 927 A.2d 1269 (2007). "In doing so, we begin with the language of the statute, ascribing to the words `their ordinary meaning and significance.'" Ibid. (quoting DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005)).
The proviso to the grandfathering provision of N.J.S.A. 40A:9-1.9 does not state that a municipality which undertakes to amend a preexisting residency ordinance can do so only by adopting a new ordinance that conforms in all respects with the 1978 legislation. It merely states that any such amendment "shall be subject to all the relevant provisions of this act." N.J.S.A. 40A:9-1.9 (emphasis added). Thus, if a municipality with a preexisting residency ordinance adopts an amendment authorizing waivers from its residency requirements, that amendment must comply with N.J.S.A. 40A:9-1.6 and -1.7 because those subsections are "relevant" to any waiver provision. But a municipality that adopts waiver provisions does not thereby become subject to all the other requirements of the 1978 legislation. Moreover, a municipality that adopts an amendment to a preexisting residency requirement without adding any waiver provision does not subject itself to the waiver provisions of N.J.S.A. 40A:9-1.6 and -1.7. Similarly, we conclude that a municipality that undertakes to add to a preexisting residency ordinance a waiver provision, which a court declares to be invalid, does not thereby bring itself under the umbrella of the 1978 statute and thus is not compelled to adopt a new ordinance in full conformity with that statute in order to maintain its residency requirements. Therefore, the trial court correctly concluded that the declaration of invalidity of the 1987 amendment to the 1972 residency ordinance does not invalidate the entire residency ordinance.

III
Finally, we consider the issue of remedy as it relates to Santiago's continued occupancy of the position of Police Director. Because Santiago is no longer a Trenton resident and has indicated that he does not intend to resume Trenton residency, the trial court correctly concluded that he is *260 required under N.J.S.A. 40A:9-11 to vacate the position. We also agree with the trial court's conclusion that Santiago should be allowed to remain in the position for an additional period of time to facilitate an "orderly transition" to his successor. However, we conclude that the thirty-day period allowed by the trial court is too short. Therefore, we increase that period to seventy-five days from the filing of this opinion. As thus modified, we affirm the judgment on appeal.
NOTES
[1] The allocation of power between the mayor and council of a municipality that has adopted the mayor-council form of municipal government mirrors the allocation of power between the Governor and Legislature in the State government. The Governor has the power to appoint the head of each principal department of State government, subject to confirmation by the State Senate, N.J. Const. art. V, § 4, ¶ 2. However, the Legislature retains the authority to prescribe the qualifications of department heads. Cf. Humane Soc'y of U.S. v. N.J. State Fish & Game Council, 70 N.J. 565, 573, 362 A.2d 20 (1976), appeal dismissed, 429 U.S. 1032, 97 S.Ct. 723, 50 L.Ed.2d 744 (1977). Notably, these qualifications include a requirement that every department head be a resident of New Jersey. N.J.S.A. 52:14-7(b); see Kennedy, supra, 29 N.J. at 186, 148 A.2d 473.
[2] Defendants do not argue that, as a matter of municipal legislative intent, the 1987 City Council that added a waiver provision to the 1972 residency ordinance considered the waiver provision so essential that a declaration of its invalidity also would require invalidation of the residency requirement. See Angermeier v. Borough of Sea Girt, 27 N.J. 298, 311, 142 A.2d 624 (1958). Instead, defendants' argument is based solely on the intent of the State Legislature in enacting the grandfather provision of N.J.S.A. 40A:9-1.9.