291 N.J. Super. 336 (1996)
677 A.2d 295
COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, LOCALS 1040 AND 1081 ET AL., PLAINTIFFS,
v.
JAMES W. TREFFINGER, COUNTY EXECUTIVE, IN HIS OFFICIAL CAPACITY, AND ESSEX COUNTY, DEFENDANTS. ESSEX COUNTY POLICE PBA LOCAL 54 ET AL., PLAINTIFFS,
v.
JAMES W. TREFFINGER, COUNTY EXECUTIVE; COUNTY OF ESSEX, DEFENDANTS. ESSEX COUNTY SHERIFFS OFFICERS, POLICE BENEVOLENT ASSOCIATION, LOCAL 183 ET AL., PLAINTIFFS,
v.
COUNTY OF ESSEX AND ESSEX COUNTY EXECUTIVE JAMES J. TREFFINGER, DEFENDANTS. CLIFFORD J. MINOR, IN HIS CAPACITY AS ESSEX COUNTY PROSECUTOR, PLAINTIFF,
v.
JAMES W. TREFFINGER, IN HIS CAPACITY AS ESSEX COUNTY EXECUTIVE, AND THE COUNTY OF ESSEX, DEFENDANTS. ESSEX COUNTY PROSECUTOR'S OFFICE ASSISTANT PROSECUTOR'S ASSOCIATION ET AL., PLAINTIFFS,
v.
JAMES W. TREFFINGER, IN HIS CAPACITY AS ESSEX COUNTY EXECUTIVE; AND COUNTY OF ESSEX, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
May 9, 1996.
*339 Steven P. Weissman for plaintiffs Communication Workers of America, AFL-CIO, Locals 1040 and 1080 et al.
Paul L. Kleinbaum for plaintiffs Essex County PBA Local 54 et al.
David E. Yankowitz for plaintiffs Essex County Sheriffs Officers, Police Benevolent Association, Local 183 et al.
John S. Redden for plaintiff, Clifford Minor, in his capacity as Essex County Prosecutor.
Gary J. Bogdanski for plaintiffs Essex County Prosecutor's Office, Assistant Prosecutor's Association et al.
Joseph P. La Sala and Thomas P. Scrivo for defendant James W. Treffinger, In His Capacity As Essex County Executive.
Michael R. Griffinger for defendant County of Essex.
*340 WEISS, A.J.S.C.

I. BACKGROUND
On September 14, 1978, the Essex County Board of Chosen Freeholders (Board) passed Resolution No. 36454 (Resolution) requiring that all employees of the County of Essex (County) be residents of the County. (See Appendix). On September 19, the County Supervisor approved the Resolution.
On January 4, 1996, the County Executive, James W. Treffinger (Treffinger), issued Executive Order 96-1, declaring the County's intention to enforce Resolution No. 36454. Following the County Executive's announced intention to enforce the residency requirement, five suits were instituted to declare the County's action invalid.
On February 1, 1996, the first of these lawsuits was filed by the Communication Workers of America (CWA), AFL-CIO, Locals 1040 and 1081, the International Brotherhood of Electrical Workers, AFL-CIO, Local 1158, the International Brotherhood of Teamsters, AFL-CIO Local 723, Public Employees' Supervisors' Union and the Essex County Unit Managers and Supervisors' Association. Also listed are individual members of the unions who are affected by the residency requirement. Later that day another suit was filed by Essex County PBA Local 54, the Essex County Prosecutor's Office, PBA Local 325 and Herbert Pendleton and E.J. Pollara, as state delegates for the two unions.
On February 9, two additional suits were filed challenging the enforcement of the residency requirement. Suit was filed by plaintiffs Essex County Sheriff's Officers PBA Local 183, Essex County Corrections Officers, Essex County Jail Annex, Caldwell, Police PBA Local 157, Essex County Corrections Officers, Essex County Jail, Newark, PBA Local 153 and the Superior Officers' Association for the Sheriffs, Jail and Jail annex. The second suit instituted on February 9, was filed by Clifford J. Minor in his capacity as Essex County Prosecutor. An amended complaint was filed by Clifford J. Minor on February 16.
*341 The final suit challenging the enforcement of the residency requirement was filed on February 23, by the Essex County Prosecutor's Office Assistant Prosecutor's Association and by individuals Gary J. Bogdanski, Joseph P. Donohue and Raymond Hoffman. Orders to show cause requesting preliminary injunctive relief were signed by the court. On March 8, defendants Treffinger and the County filed a brief and certifications in opposition to plaintiffs' orders to show cause and in support of defendants' motion to dismiss plaintiffs' complaints. Oral argument was entertained by the court on March 19, 1996.

II. VALIDITY OF RESOLUTION
The threshold issue in this case is whether the Freeholder Board's enactment of the residency requirement by resolution on September 14, 1978, was a valid exercise of its legislative power. Plaintiffs argued that the residency requirement is void because it was passed by resolution and not by ordinance. Initially, some plaintiffs relied on N.J.S.A. 40:41A-66, which became effective November 13, 1978. L. 1978, c. 141, § 9. That statute requires the Board to exercise its legislative power by ordinance, unless the power to be exercised falls within one of the statutes enumerated exceptions which are permitted to be exercised by resolution. Plaintiffs argued that the residency requirement did not fall within one of the enumerated exceptions and, thus, is void because it was not enacted by ordinance. Plaintiffs, however, incorrectly relied on L. 1978, c. 141, § 9 (an amended form of N.J.S.A. 40:41A-66) which is significantly different than the statute in effect at the time the residency resolution was passed.
The enabling legislation in effect on September 14, 1978, which permitted the adoption of a residency requirement was N.J.S.A. 40A:9-1.3, which provided:
Unless otherwise provided by law, the governing body of any local unit may by resolution or ordinance, as appropriate, require, subject to the provisions of this act, all officers and employees employed by the local unit after the effective date of this act to be bona fide residents therein. A bona fide resident for the purpose of this act is a person having a permanent domicile within the local unit and one which *342 has not been adopted with the intention of again taking up or claiming a previous residence acquired outside of the local unit's boundaries. Any local unit wherein the provisions of Title 11 (Civil Service) of the Revised Statutes are operative, shall transmit a copy of the adopting ordinance or resolution, as the case may be, to the Civil Service Commission.
[L. 1978, c. 63, § 1, eff. June 30, 1978. (emphasis added).]
Prior to June 30, 1978, the effective date of this statute, the statute was written in mandatory terms and required all employees whose "duties of which relate to county only" to be residents of the county. The changes effected by the legislature on June 30, 1978, were to make the residency requirement permissive by the adoption of a "resolution or ordinance" and to change those covered from employees whose "duties of which relate to county only," to employees "employed by the local unit." N.J.S.A. 40A:1-1, defines a local unit as a county or municipality.
In September 1978, the County operated under the County Supervisor Plan form of government, as set forth in N.J.S.A. 40:41A-59-71. Under this form of government, the Board of Chosen Freeholders' legislative power was governed by N.J.S.A. 40:41A-66, which on September 14, 1978, read, "[t]he legislative power of the County shall be vested in the Board of Chosen Freeholders." L. 1972, c. 154 § 66. N.J.S.A. 40:41A-67(a), further provided that: "The Board of Chosen Freeholders shall pass in accordance with this act whatever ordinances and resolutions it deems necessary and proper for the good governance of the county." L. 1972, c. 154, § 67(a).
Therefore, the court rejects plaintiffs' argument that the residency requirement is invalid because it was not enacted by ordinance, and finds that the statutory provisions then in effect under the County Supervisor Plan form of government gave the Board the legislative authority to enact the residency requirement by resolution.

III. OFFICES OF SHERIFF & PROSECUTOR
The second issue is whether the members of the offices of the sheriff and prosecutor are subject to the residency requirement *343 adopted by the County. In addition to an estoppel argument, the Prosecutor and the Sheriff argue that their offices are not subject to the residency requirement because the members of their offices are not employed by the County.

A. PROSECUTOR
The County argues that the issue of whether members of the county prosecutor's office are subject to a county residency requirement was resolved almost nineteen years ago in Passaic County Prosecutor v. Passaic County Freeholders, 159 N.J. Super. 258, 387 A.2d 1219 (App.Div.), certif. granted and remanded 77 N.J. 511, 391 A.2d 524 (1978).
In Passaic County, the defendants, county and treasurer, refused to pay the salaries of an assistant prosecutor and a county investigator who were duly appointed by plaintiff prosecutor. The defendants refused to pay the appointees because the said appointees were non-residents of Passaic County. Plaintiff instituted an action in lieu of prerogative writ against defendants in order to compel payment. The controlling statute at the time of the trial court's decision, N.J.S.A. 40A:9-1, read:
Except in the case of counsel, attorney, engineer, health officer, auditor, comptroller, appointed tax collector, elected assessors who have received tenure under P.L. 1967, c. 44, s. 7 (C. 54:1-35.31), appointed tax assessor, or members of boards of assessors or as otherwise provided by law, every person holding an office, the authority and duties of which relate to a county only, or to a municipality only, shall reside within said county or municipality, as the case may be.
Any person holding or attempting to hold any such office in a county or municipality in violation hereof, may be ousted in a proceeding in lieu of prerogative writ.
[Passaic County Prosecutor, supra, 159 N.J. Super. at 260, 387 A.2d 1219].
The trial judge entered a judgment directing defendants to pay the salaries. The defendants appealed.
On appeal, the Appellate Division framed the issue as follows: "[t]he resolution of the controversy depends on whether the respective offices of assistant county prosecutor and county investigator are positions `the authority and duties of which relate to a county only.'" Id., (emphasis added). The court, in addressing *344 this issue, stated that the "dominant and pervading thesis of the statutes and cases pertaining to county prosecutors and their staffs is that their authority and duties are local, i.e., confined to their respective counties." Id. at 264, 387 A.2d 1219. Accordingly, the Appellate Division reversed the trial court and held that the assistant prosecutor and the county investigator were required to be residents of Passaic County.
Following the May 2, 1978, Appellate Division decision in Passaic County, the New Jersey Supreme Court granted Certification on July 21, 1978, and remanded the matter to the Superior Court, Law Division, for further consideration in light of the adoption of c. 63, L. 1978 by the Legislature, which became effective June 30, 1978. Passaic County Prosecutor, supra, 77 N.J. at 511, 391 A.2d 524. As previously set forth, L. 1978, c. 63 amended the law to make the residency requirement permissive rather than mandatory and changed the covered employees from those whose "duties of which relate to county only," to employees "employed by the local unit." L. 1978, c. 63 is the current statute relating to the residency requirement. N.J.S.A. 40A:9-1.3, reads in part:
Unless otherwise provided by law, the governing body of any local unit may by resolution or ordinance, as appropriate, require, subject to the provisions of this act, all officers and employees employed by the local unit after the effective date of this act to be bona fide residents therein.
[Id. (emphasis added)]
The County argues that, "[a]lthough the earlier statute admittedly contained different language than the current one, Passaic County is applicable here since the fundamental issue is the same: are the members of the County Prosecutor's Office employees of the county?" The court finds the County's argument unpersuasive. Passaic County is distinguishable from the case at bar because of the change in law. This court finds the change in law to be significant, as the decision in Passaic County was based on the language in N.J.S.A. 40A:9-1, "duties of which relate to a county only" and not the current language of N.J.S.A. 40A:9-1.3, "employed by the local unit." The court finds that Passaic *345 County is not applicable to the case at bar as it was based on a repealed statute.
In determining whether the residency requirement is applicable to the members of the prosecutor's office, the court must decide, pursuant to N.J.S.A. 40A:9-1.3, whether the members of the prosecutor's office are "employed by the local unit" or employed by the prosecutor. The prosecutor is a constitutional state officer. N.J. Const. art. VII, § 2, par. 1. Although, as a practical matter, the prosecutor is normally a resident of the county in which he or she holds office, neither constitutionally, nor statutorily, N.J.S.A. 2A:158-1, is there any requirement that a prosecutor be a resident of the county in which he or she serves. In Cetrulo v. Byrne, 31 N.J. 320, 157 A.2d 297 (1960), the Court held that:
[t]he Legislature as well as the courts have long recognized the strong policy considerations which dictate that since the county prosecutor is charged with heavy enforcement responsibilities he must be given broad powers to appoint his own personnel....
[Id. at 328, 157 A.2d 297]
The prosecutor's statutory authority to appoint the members of his office are provided by the following statutes:

Assistant prosecutors in and for the respective counties may be appointed by the prosecutors of such counties as hereinafter provided, who shall hold their appointments at the pleasure of the respective prosecutors. ...
[N.J.S.A. 2A:158-15 (emphasis added)]
In counties of the first class having a population not in excess of eight hundred thousand there is created in the office of the county prosecutor, the office or position of legal assistant to the county prosecutor which shall be in the unclassified service of the civil service. The prosecutor of each of the said counties may appoint, subject to the approval hereinafter required, suitable persons to said office or position.... Every such legal assistant shall serve at the pleasure of the county prosecutor and be subject to removal by such prosecutor. ...
[N.J.S.A. 2A:158-18.1 (emphasis added)]
The prosecutor in each of the several counties of this State may appoint such number of suitable persons, not in excess of the number, and at salaries not less than the minimum amounts, in this chapter provided, to be known as county detectives, to assist the prosecutor in the detection, apprehension, arrest and conviction of offenders against the law. Persons so appointed shall be in the classified service of the civil service and shall possess all the powers and rights and be subject to all the obligations of police officers, constables and special duty sheriffs in criminal matters.

*346 [N.J.S.A. 2A:157-2 (emphasis added)]
In addition to the office of county detective, there is created in the office of the prosecutor, the office or position of county investigator which shall be in the unclassified service of the civil service. The prosecutor of each of the several counties of this state may appoint such number of suitable persons, not in excess of the number, and at salaries not less than the minimum amounts, in this act provided, to be known as county investigators, to serve at his pleasure and subject to removal by him, and to assist the prosecutor in the detection, apprehension, arrest and conviction of offenders against the law. Persons so appointed shall possess all the powers and rights and be subject to all the obligations of police officers, constables and special duty sheriffs, in criminal matters.
[N.J.S.A. 2A:157-10 (emphasis added)]
The Supreme Court in Cetrulo further noted that "[n]owhere have we found any statutory authority which supports the notion that an outside legislative agency such as the board of freeholders has the right to appoint assistants to the prosecutor, particularly legal assistants...." Cetrulo, supra, 31 N.J. at 328-29, 157 A.2d 297.
The Public Employment Relations Commission (PERC) line of cases further support the conclusion that the Prosecutor is the employer of the members of the prosecutor's office. In In the Matter of Middlesex County Prosecutor, 255 N.J. Super. 333, 605 A.2d 265 (App.Div. 1992), the Detectives and Investigators Association of the Middlesex County Prosecutor's office filed an unfair labor practice charge against the Middlesex County Prosecutor. The Association complained of the prosecutor's unilateral rescinding of credits granted to newly hired employees based on prior governmental employment. PERC ordered the prosecutor to reinstate the credits, and the prosecutor appealed, arguing that the Board in effect directed the prosecutor to alter the existing agreement by the Board's enactment of the 1989 Resolution rescinding the credit. The prosecutor maintained that the powers reserved for the freeholders cannot be usurped by any other board or official, including the prosecutor, and thus contended that the prosecutor cannot negotiate a credit in violation of the Board's resolution. In doing so, the prosecutor relied upon N.J.S.A. 40:20-1, which states in part:

*347 The property, finances and affairs of every county shall be managed, controlled and governed by the board elected therein, to be known as "the board of chosen freeholders of the county of ____ (specifying name of county)", and the executive and legislative powers of the county shall be vested in that board of chosen freeholders, except where by law any specific powers or duties are imposed or vested in a Constitutional officer.
[Id.]
The Appellate Division disagreed, and affirmed PERC. The court reasoned that the prosecutor is a constitutional officer, see N.J. Const. art. VII, § 2, ¶ 1, and as such, fits into the exception in the statute. The court further stated:
[P]rosecutors are authorized by statute to incur necessary expenses in the conduct of their offices and if the freeholders do not honor the prosecutor's certification of his expenses they may be ordered to pay the sums authorized by the assignment judge for the county. N.J.S.A. 2A:158[-]7, saved from repeal by N.J.S.A. 2C:98[-]3. See, also, N.J.S.A. 2A:157[-]18 and [-]19. The language of the statute indicates a legislative intent to place the prosecutor in a dominant position with relation to the freeholders for the purpose of maintaining his independence and effectiveness.

[Id., at 339, 605 A.2d 265, (quoting In re Application of Bigley, 55 N.J. 53, 56, 259 A.2d 213 (1969)) (emphasis added)]
Based on the foregoing, the court held that the prosecutor is a separate employer from the freeholder, and, as a separate employer, the prosecutor must negotiate with the investigators and detectives. The court explained:
As the public employer, appellant [prosecutor] has the duty under the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1, et seq., to, among other responsibilities, maintain terms and conditions of employment and to bargain in good faith with respondent. Since appellant [prosecutor] failed to negotiate any change in the existing agreement with respondent, rescinding the credit was an illegal unilateral change.
[Id.]
Thus, the statutes and case law demonstrate that the prosecutor is the exclusive employer for his office.
In addition to Passaic County, supra, the County cites to Dunne v. Fireman's Fund American Insurance Co., 69 N.J. 244, 353 A.2d 508 (1976), in support of its contention that the County is the employer of the members of the prosecutor's office. The primary issue in Dunne was whether three detectives of the prosecutor's office were county employees within the meaning of a *348 county insurance policy. The three detectives and the County of Morris were originally sued for an alleged illegal search. Fireman's Fund undertook defense of the action for the detectives and the county. The trial court rendered summary judgment for all defendants and the Appellate Division affirmed the judgment of dismissal in favor of the County of Morris. Cashen v. Spann, 125 N.J. Super. 386, 311 A.2d 192 (App.Div. 1973). The Appellate court reasoned that the detectives, in preparing the affidavit upon which the search warrant was based, were agents of the State and not the County. The New Jersey Supreme Court affirmed. Cashen, supra, 66 N.J. 541, 334 A.2d 8, cert. denied, 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46 (1975). Justice Pashman, writing for a unanimous Court, noted that:
in the context of this case, ... the detectives are to be considered as agents of the State and not the county. We wish to make it clear, however, that our resolution of this issue is limited to the factual circumstances presented. We find it appropriate to regard the defendant officials as State agents where the alleged tortious conduct arose out of the investigation of criminal activity, but we express no opinion on the question of whether ... detectives can be considered State or county employees for other purposes.
[Cashen, supra, 66 N.J. at 552, 334 A.2d 8 (citations omitted)]
Following the receipt of the Appellate Division decision in Cashen, Fireman's Fund refused to defend the detectives. The detectives then instituted suit in Dunne requesting an order directing the County of Morris and Fireman's Fund to defend and pay any lawful settlement or judgment in the Cashen suit. The trial court in Dunne found that the County of Morris should indemnify the detectives. The County of Morris then appealed to the Appellate Division that part of the order directing the County to appear and represent the three detectives. The Supreme Court granted certification, Dunne v. Fireman's Fund Amer. Insur., 68 N.J. 175, 343 A.2d 463 (1975), of the pending appeal.
The Court, in addressing the issue of whether the three detectives of the prosecutor's office were county employees within the meaning of a county insurance policy, said:
the county-county detective relationship is that of an employer-employee for certain administrative and remunerative purposes. This finding is not inconsistent *349 with our conclusion that in preparing and executing the affidavit upon which the search warrant was based and conducting the search, Dunne, Bickley and Spann were "agents of the State." At the same time they were also employees of and there existed an employer-employee relationship with the County.
[Dunne, supra, 69 N.J. at 250-51, 353 A.2d 508 (emphasis added)]
The Court went on to state:

This result conforms with the legislative policy that the county bear all costs and expenses, including liability insurance premiums, incident to employment of county detectives. N.J.S.A. 2A:158-7.
The conduct of the parties evinces their objective that coverage was intended. The County unhesitatingly turned the defense of the Cashen suit against the three detectives over to the carrier, which accepted the defense without objecting that they were not persons insured under the policy. Conspicuous by its absence was any statement in the reservation of rights agreement with respect to the status of the detectives. These reactions to the suit against the detectives demonstrate the understanding of Fireman's Fund and the County that the detectives were employees for the purpose of coverage under the policy.

[Id. at 251-52, 353 A.2d 508 (emphasis added) (citations omitted)]
Thus, the Dunne case is inapplicable to the case at bar because its holding is limited to a determination of who was the employer of the detectives for insurance coverage purposes, i.e. administrative and remunerative purposes, whereas the issue before this court is whether the county is the employer for purposes of the residency requirement statute.
A further argument can be made that the language of the Board's Resolution is further support of the prosecutor's contention that the members of his office are not subject to the residency requirement. The Resolution provides in part:
1. Unless otherwise provided by law, all officers and employees hired by the County of Essex, after the effective date of this resolution shall be a bona fide resident of the County of Essex. (emphasis added).
The Board, in drafting the resolution, enacting the residency requirement used the language "all officers and employees hired by the County of Essex," in place of the language in the residency requirement enabling statute which provides, "all officers and employees employed by the local unit. ..." The Board's decision to substitute the language "employed by" with "hired by" indicates the Board's intent to limit the definition of employer to the hiring *350 authority of the officer or employee. The prosecutor is the exclusive hiring authority for his office.
This court finds that, based on the relevant statutes and case law, the prosecutor is the exclusive employer and/or hiring authority for his office. The County did not hire nor does it employ the members of the prosecutor's office. Accordingly, the members of the prosecutor's office are not subject to the residency requirement.

B. SHERIFF
The Sheriff argues that the sheriff's department is a constitutional office whose employees are appointed by an elected sheriff. Thus, the sheriff asserts that members of his office are within his employ and not subject to the county residency requirement.
In Clark v. Freeholders of Hudson Cty., 125 N.J. Super. 340, 343, 311 A.2d 12 (App.Div. 1973), the court said:
Various sections of the statutes grant authority to the board of freeholders to fix or approve the salaries to be paid court attendants and classes of employees of the sheriff. But that power to fix or approve salaries  and to approve the creation of the position of the officers in charge of court attendants  in no wise [sic] embodies a grant of power to the board to control the exercise by the sheriff of the authority granted him by the Legislature to select and appoint court attendants and other employees, positions provided for by the legislative enactments.
[Id. (emphasis added)]
The sheriff's statutory authority to appoint and employ the members of his office is provided by N.J.S.A. 40A:9-117, which in part states: "The sheriff shall select and employ the necessary deputies, chief clerks and other personnel."

[Id. (emphasis added)]
The sheriff's specific authority to appoint the members of his office is provided by the following New Jersey statutes:

The appointment of an undersheriff shall be by writing under the hand and seal of the sheriff. . .. Nothing in this section shall prevent the sheriff at his pleasure from removing an undersheriff.

[N.J.S.A. 40A:9-115 (emphasis added)]
The sheriff of each county shall, subject to the budget of the county, appoint such persons as may be necessary, to the position of sheriff's officer. .. .
[N.J.S.A. 40A:9-117.6 (emphasis added)]

*351 The sheriff of each county may appoint a number of persons, not to exceed 15% of the total number of sheriff's officers employed by the sheriff and set forth in the sheriff's table of organization in the county budget, to the position of sheriff's investigator. All sheriff's investigators shall serve at the pleasure of the sheriff making their appointment and shall be included in the unclassified service of the civil service.
[N.J.S.A. 40A:9-117a (emphasis added)]
Thus, as the statutes and case law demonstrate, the sheriff is the employer for his office.
This court finds that the Sheriff, not the County, is the exclusive employer and/or hiring authority for his office. Accordingly, the members of the sheriff's office are not subject to the residency requirement resolution adopted in 1978.

IV. ESTOPPEL
The next question to be addressed is whether this court should issue preliminary injunctive relief to prevent defendants from terminating the remaining plaintiffs in this case through enforcement of the residency requirement, pending a final determination of the issue of estoppel on the merits. Before addressing the issue of estoppel, it is important to note that although the court invited discussion on the issue of whether the application of estoppel was to be considered based each individual plaintiff or for the plaintiffs as a group, the parties agreed that the issue of estoppel should be considered for plaintiffs as a group.
Preliminary injunctive relief summons the most sensitive exercise of judicial discretion. Crowe v. De Gioia, 90 N.J. 126, 132, 447 A.2d 173 (1982). "In exercising that discretion, courts have been guided traditionally by certain fundamental principles."
[A] preliminary injunction should not issue except when necessary to prevent [immediate] irreparable harm[,] ... when the legal right underlying plaintiff's claim is []settled[,] ... when all material facts are [un]controverted[,] ... and [when the balancing of] the "relative hardships to the parties in granting or denying relief," Id. at 132-134, 447 A.2d 173 favor the grant of temporary *352 relief to maintain the status quo pending the outcome of a final hearing.
The New Jersey Courts have defined equitable estoppel as:
[t]he effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and at equity, from asserting rights which might perhaps otherwise have existed ... as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse.... Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339 [403 A.2d 880] (1979). [O'Neill v. Washington Tp., 193 N.J. Super. 481, 487, 475 A.2d 55 (App.Div. 1984)].

See also Highway Trailer Co. v. Donna Motor Lines, Inc. 46 N.J. 442, 449, 217 A.2d 617, cert denied, 385 U.S. 834, 87 S.Ct. 77, 17 L.E.2d 68 (1966); Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503-04, 117 A.2d 585 (1955).
[Chrisomalis v. Chrisomalis, 260 N.J. Super. 50, 55, 615 A.2d 266 (App.Div. 1992)]
It is well settled that "[e]quitable estoppel is rarely invoked against a government entity, particularly when estoppel would `interfere with essential governmental functions.' Nonetheless, equitable considerations are relevant to assessing governmental conduct, and may be invoked to prevent manifest injustice." O'Malley v. Department of Energy, 109 N.J. 309, 316, 537 A.2d 647 (1987) (citations omitted); see also Vogt v. Borough of Belmar, 14 N.J. 195, 101 A.2d 849 (1954) (borough was estopped from denying a volunteer fire fighter compensation under the Workers Compensation Act).
The County argues that Kennedy v. City of Newark, 29 N.J. 178, 148 A.2d 473 (1959), Abrahams v. Civil Serv. Comm'n, 65 N.J. 61, 319 A.2d 483 (1974), Trainor v. City of Newark, 145 N.J. Super. 466, 368 A.2d 381 (App.Div. 1976) and In The Matter of the City of Newark v. PBA Local 3, 272 N.J. Super. 31, 639 A.2d 333 (App.Div.), certif. denied, 137 N.J. 315, 645 A.2d 142 (1994), (the Newark cases), bar plaintiffs' application of estoppel against the County. In each of the cases, the courts held that the plaintiffs failed to show a "studied policy not to enforce" the residency ordinance by Newark and, thus, in each case concluded that the city was not estopped from enforcing its ordinance. This *353 court finds that the Newark cases do not foreclose the use of equitable estoppel against a governmental unit attempting to enforce a residency requirement where there is evidence of a "studied policy not to enforce" the ordinance.
In Kennedy v. City of Newark, 29 N.J. 178, 148 A.2d 473 (1959), the plaintiff employees challenged the validity of the City of Newark's ordinance which required all of its officers and employees to reside in the city as a condition for continued employment. The Law Division held the ordinance invalid. Prior to the Appellate Division's consideration of the appeal, the Supreme Court granted certification. The Court dismissed plaintiff's challenge to the ordinance based on constitutional grounds. Id. at 184, 148 A.2d 473. The plaintiffs in Kennedy further contended that the city was estopped from enforcing the ordinance because of an alleged policy of non-enforcement. The record before the Court was:
Of the 18 employees who testified, all but one had taken a competitive examination and knew the Civil Service Commission required 12 months' residence for eligibility. Thirteen admitted knowledge of the ordinance at the time of termination of the residence in the city. Two claimed to have learned of the ordinance thereafter. The testimony of the remaining three is unclear. Four, including one who denied knowledge at the time of moving, gave a Newark address in applying for a promotional examination after leaving the city. Six had sought permission from a superior to move. The pretrial order contains the stipulation that none of the plaintiffs received permission to reside outside the city, although a few testified that oral approval was given.
[Id. at 192, 148 A.2d 473.]
The Court found that the record revealed widespread knowledge of the ordinance by the employees. Id. The Court then reviewed the evidence to determine whether there was a "studied policy not to enforce the ordinance." Plaintiffs relied upon the following interrogatory and answer in support of its assertion that there was such a policy:
2. Has the ordinance since its original adoption been enforced in that any employees of the City of Newark have been tried or discharged for non-residence in the City? Ans. No.
[Id.]
*354 The answer to the interrogatory was in and of itself insufficient to establish evidence of a "studied policy not to enforce the ordinance."
Quite obviously the missing link is official knowledge of violations of the ordinance. One may suspect some laxity, but the testimony is barren of proof. We do know that when the loyalty oaths in 1955 revealed that 585 employees were non-resident, the city did act.
[Id.]
Thus, by implication the Kennedy Court determined that estoppel will be applied against a governmental unit when there is evidence of a "studied policy not to enforce the ordinance." A "studied policy not to enforce the ordinance" will be found where the record demonstrates both the government's official knowledge of violations of the ordinance, coupled with the government's nonenforcement of the ordinance.
In Abrahams v. Civil Serv. Comm'n, 65 N.J. 61, 319 A.2d 483 (1974), the Court again addressed the validity of the City of Newark's residency ordinance. The appellant, Mrs. Abrahams, while a resident of Union County began working in the Newark Law Department as a secretary in 1966. She had given a Newark address when applying for the position. In 1967 she moved to Newark and in 1970 she moved back to Union. In 1970 the corporation counsel notified all secretaries and clerical personnel in his department that anyone not a resident of the city by January 1, 1971 would be subject to dismissal. Appellant failed to return to the city and disciplinary proceedings were instituted against her which resulted in her being terminated. She then appealed to the Civil Service Commission.
The Commission's hearing officer ruled he could not decide the constitutional issue. He held the ordinance had not been selectively enforced as it had been uniformly enforced in the Law Department, where appellant was employed, and he concluded that the appellant's reasons for not residing in the city were insufficient. The Civil Service Commission then adopted the report and recommendation of the hearing officer to dismiss the appeal. The appeal to the Appellate Division was certified by the *355 New Jersey Supreme Court prior to the hearing by that tribunal. Abrahams v. Civil Serv. Comm'n, 63 N.J. 561, 310 A.2d 476 (1973).
The Court set forth the primary issue before it:
[t]he primary question on appeal is whether the Newark ordinance requiring continued residence in the city as a condition of employment by the city of officers and employees, held valid by this court in Kennedy v. City of Newark, 29 N.J. 178 [148 A.2d 473] (1959), is now to be held violative of the federal constitution by virtue of anything held in, or logically compelled by, the decision of the United States Supreme Court in Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).
[Abrahams, supra, 65 N.J. at 63, 319 A.2d 483.]
The Court, in addressing appellant's contention that Kennedy was superseded by Shapiro v. Thompson, (a case which assertedly recognized a fundamental right to travel which cannot be restrained absent a showing of a compelling state interest), said:
It is contended that the residence restriction in the Newark ordinance infringes on the right of Newark employees to "travel" in the sense of changing their places of residence from Newark to beyond the city limits. We find the argument insubstantial. The Supreme Court was at pains in Shapiro, and has been even more so in later cases, including, very recently, Memorial Hospital v. Maricopa County, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974), to make clear that the holding in Shapiro was not applicable to bona fide continuing residence requirements as distinguished from pre-qualifying durational residence requirements. See 394 U.S. at 636, 638, n. 21, 89 S.Ct. 1322.
[Id. at 66, 319 A.2d 483]
Thus, the Court held that the Newark ordinance was a bona fide continuing residence requirement which was constitutionally valid.
The Court next addressed appellant's contention that there had been a discriminatively selective enforcement of the ordinance against appellant. The Court, in holding that the appellant failed to demonstrate that the ordinance was selectively enforced, said:
The ordinance was invoked against another secretarial employee in the Law Department at the same time as against appellant. The mere fact that the director of the law department undertook a thorough enforcement of the residence requirement in his own department in 1970 does not, absent any evidence of a deliberate policy of non-enforcement by the directors of the other city departments, or by the city administration as a whole, establish invidious discriminatory enforcement by the city as against the appellant. Cf. Kennedy v. City of Newark, supra, where, despite a showing that in 1955 585 employees were in violation of the ordinance (29 N.J. at 183 [148 A.2d 473]) and that the City admitted that up to that time no one had been discharged for non-residence (Id. at 192 [148 A.2d 473]), the city was not *356 barred from commencing to enforce the ordinance on January 1, 1957. The court said (Ibid.): "There is no evidence of a studied policy not to enforce the ordinance. ... Quite obviously, the missing link is official knowledge of violations of the ordinance. One may suspect some laxity, but the testimony is barren of proof."
[Id. at 74-75, 319 A.2d 483 (emphasis added)]
In addressing whether there was any evidence of a studied policy of nonenforcement by the directors of the other city departments or by the city administration as a whole, the Court said:
While appellant did establish here that upon a random selection of 142 employee records (we may take judicial notice that the City has a far greater number of employees than that) 21 persons, exclusive of nine excepted lawyers, were found to be nonresidents, there was no evidence that their department heads knew them to be such; nor that non-resident employees in other departments had not been discharged in the past. And for all this record shows to the contrary, the employing officers of the city may in the past have disqualified non-resident applicants for city employment. The corporation counsel testified that he had done so in his department.
[Id. at 75, 319 A.2d 483]
Thus, the Court held that the appellant failed to meet the burden of demonstrating invidious discriminatory enforcement of the ordinance by the city as would render the city powerless to enforce the ordinance against appellant.
In Trainor v. City of Newark, 145 N.J. Super. 466, 368 A.2d 381 (App.Div. 1976), plaintiff, a non-resident employee of the city, brought an action challenging the constitutionality of the City of Newark's residency ordinance. The trial judge held that the distinction in classifications between those employed by the city who were required to be residents and those employed by the city who were not required to be residents was not rationally related to the basis of the ordinance and declared the ordinance to be unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment. The trial judge further concluded that the evidence showed a "studied policy of nonenforcement." The city then appealed.
The Appellate Division reversed the trial court. The appellate court found the ordinance constitutional because there was a rational basis for the city to treat certain employees specifically exempted in the ordinance and certain employees of autonomous *357 city agencies who were not required to live within the city differently than city employees who were required to live within the city. The Appellate Division disagreed with the trial judge's conclusion that the evidence showed a "studied policy of nonenforcement." Id. at 478, 368 A.2d 381. The record showed that excluding the employees of autonomous city agencies, and those exempt by the ordinance, there were 10,766 employees subject to the ordinance, of which only 476 (4.5%) were non-residents. Id. at 477, 368 A.2d 381. The record further reflected that of those 476, there were:
some whose employment applications showed no evidence of nonresidency; some who were excused from the residency requirement by department heads because of one of the reasons stated in the ordinance; some who were hired as residents and became nonresidents later, and some who initially concealed their nonresidents status. Of the 15 who testified for plaintiffs, seven were residents when hired and moved away years later, five were given "special circumstances" exceptions, and two (a social caseworker and a sanitary inspector) were in classified service and were hired as nonresidents after all resident applicants had been hired.
[Id. at 479, 368 A.2d 381]
The appellate court concluded that based on the evidence, comparatively few of the work force could be found to have been placed on the payroll with utter disregard for the ordinance. Thus, it held that "the number of non-residents were proportionally too minimal to warrant a finding that there was a studied discriminatory design." Id. It went on to state that:

Abrahams made it quite clear that "the general rule is that a municipality is not precluded or estopped from enforcing an ordinance merely because certain persons have been permitted to violate it without prosecution."
[Id. at 479-80, 368 A.2d 381 (quoting Abrahams, supra, 65 N.J. at 75, 319 A.2d 483 (citations omitted))].
What was missing in Trainor was "official knowledge of violations of the ordinance." Thus, the court reaffirmed the principle set forth in Kennedy which requires evidence of a "studied policy not to enforce" the residency requirement. See Kennedy, supra, 29 N.J. at 192, 148 A.2d 473.
In The Matter of the City of Newark v. PBA Local 3, 272 N.J. Super. 31, 639 A.2d 333 (App.Div.), certif. denied, 137 N.J. 315, 645 A.2d 142 (1994), the City of Newark appealed a final *358 decision of the Public Employment Relations Commission (PERC). The PERC decision held that the city had violated the New Jersey Employer-Employee Relations Act by not negotiating with PBA Local 3 over the imposition of a residency requirement upon I.D. officers. On appeal, the Appellate Division held that the ordinance could not be made a subject of negotiation.
Although the primary issue before the court was whether the ordinance could be made a subject of negotiation, the court again addressed the issue of whether the city was estopped from enforcing the residency ordinance against three non-resident I.D. officers. The record before the court was:
Barr and Payne testified that after they became employed by the City, they were unaware that they were required to remain residents. They thought they were entitled to the same exception granted police officers ... but no one ever made that representation to either of them. John D'Auria, the City's Personnel Director, testified that the City's policy and procedural manual did not state the city's residency requirement. That prompted him to circulate a memo on July 25, 1988, explaining the policy. The memo was sent to department directors. Thomas De Maio, the Chief Identification officer, testified that he was the person to enforce the residency requirement for I.D. officers, but he had not been told that I.D. officers were required to continue residing in the City. He stated that he did not receive D'Auria's memorandum. He thought I.D. officers were treated the same as police officers. Although there was testimony that I.D. officers were required to sign affidavits of residence at the time of hiring and at the same time acknowledge notice of required continued residency in the City, no such signed affidavit was produced for Barr, Payne or Williams.
[Id. at 36-37, 639 A.2d 333.]
In holding that the City was not estopped from enforcing the residency ordinance against the I.D. officers, the court, said:
The three individuals knew they were not police officers. They also knew they were employed by the City after November 1976 and therefore had no reason to believe they could be grandfathered in by the referendum. Neither inquired of the Department of Personnel whether continued residence was a requirement of their employment. Beginning in 1978, before Barr, Payne and Williams became employed as I.D. officers, I.D. officers were no longer members of the same collective negotiations unit as the police officers. The collective negotiation agreements were silent on residency requirements. The belief that I.D. officers should be treated as police officers was at best, only a wish on the part of I.D. officers which never became a reality.
... [A]fter the 1976 referendum, twelve I.D. officers, including Barr, Payne and Williams, were hired by the City. Only three of them were hired after the Director of Personnel's memorandum of July 25, 1988. The chart also indicates *359 that disciplinary proceedings were initiated against all I.D. officers not in compliance with the residency ordinance. It turns out that Barr, Payne and Williams were the only I.D. officers not residing in the City when the disciplinary actions were commenced.
[Id. at 37-38, 639 A.2d 333]
The court held that the city was not estopped from enforcing the ordinance as there was no evidence of a "lack of enforcement" of the ordinance by the city. Id. at 38, 639 A.2d 333.
This court's review of the Newark line of cases reveals that Kennedy remains the seminal case for the determination of whether the government is estopped from enforcing a residency requirement. The common thread which began in Kennedy and runs through the subsequent Newark cases is the principle that the government will be estopped from enforcing a residency requirement where the court finds evidence of the government's "studied policy not to enforce" the residency requirement. See Kennedy, supra, 29 N.J. at 192, 148 A.2d 473. A "studied policy not to enforce" will be found where there is evidence of the government's official knowledge of violations of the ordinance in conjunction with the government's nonenforcement of the ordinance.
The limited facts in this case are as follows: Of the forty-seven non-resident county employees who were hired after the residency requirement was enacted and who submitted certifications, seventeen stated that their application at the time of hiring gave their out of county address; twenty three stated that they submitted a change of address when they moved out of county; seven stated that at one time or another they were advised by county officials that there was either no residency requirement, that the residency requirement did not apply to them or that the residency requirement was not enforced; ten stated that they received mail from the county at their out of county address; twenty one stated that they never received an employee handbook; six others stated they received the employee handbook sometime after 1993; thirty stated that their first notice of the residency requirement was in 1996.
*360 This record clearly indicates the County's official knowledge of violations of the residency requirement. The County has failed to set forth any evidence of a single attempt to enforce the residency requirement from September of 1978 to January of 1996. Based on the foregoing, plaintiffs, at this stage in the proceedings, have shown a reasonable probability of ultimate success on the merits to estop the County from enforcing the residency requirement.
Plaintiffs must also demonstrate the threat of immediate irreparable harm to obtain a preliminary injunction. Crowe, supra, 90 N.J. at 132, 447 A.2d 173 (citing Citizens Coach Co. v. Camden Horse R.R. Co., 29 N.J. Eq. 299, 303 (E. & A. 1878)). Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages. Id. at 132-33, 447 A.2d 173. In certain circumstances, severe personal inconvenience can constitute irreparable injury justifying issuance of injunctive relief. Id. (citing Hodge v. Giese, 43 N.J. Eq. 342, 350, 11 A. 484 (Ch. 1887)).
In this case, plaintiffs will suffer immediate irreparable harm if they are required to sell their homes, pull their children out of school and move their families to Essex County prior to a final hearing in this matter. On the other hand, if a preliminary injunction is granted, the County would suffer little, if any harm, because a final hearing would be held prior to the July 1996 enforcement date of the residency requirement. On balancing the relative hardships to the parties in granting a preliminary injunction, this court finds the equities favor the grant of a preliminary injunction to maintain the status quo pending a final hearing.

V. CONSTITUTIONAL ISSUES
Plaintiffs have raised several constitutional challenges to the residency requirement. However, it is well settled that courts should not reach constitutional questions unless necessary to the disposition of litigation. See O'Keefe v. Passaic Valley Water Comm'n, 132 N.J. 234, 240, 624 A.2d 578 (1993) (citing Donadio v. Cunningham, 58 N.J. 309, 325-26, 277 A.2d 375 (1971) (citations *361 omitted)). Because this court has granted plaintiffs their requested relief from the enforcement of the residency requirement, this court need not, at this time, pass upon the constitutional challenges to the residency requirement.

VI. CONCLUSION
In conclusion, neither the Sheriff's or the Prosecutor's employees are subject to the Essex County residency requirement. As to the remaining plaintiffs, the County is preliminarily enjoined from enforcing the residency requirement against county employees who resided out of county as of January 4, 1996.

APPENDIX

RESOLUTION 36454 (1978)
WHEREAS, the quality of employee performance will be enhanced by a greater personal knowledge of the County's conditions and a feeling of greater personal stake in the County's progress; and
WHEREAS, there will be general economic benefits flowing from local expenditures of employees' salaries; and
WHEREAS, Chapter 63, Public Laws of 1978, establishes procedures for adopting residency requirements in any local unit; now, therefore, be it
RESOLVED, by the Board of Chosen Freeholders of the County of Essex, that:
1. Unless otherwise provided by law, all officers and employees hired by the County of Essex, after the effective date of this resolution shall be a bona fide resident of the County of Essex.
2. A bona fide resident for the purpose of this resolution is a person having a permanent domicile with the County of Essex, and one which has not been adopted with the intention of again taking up or claiming a previous residence acquired outside of the boundaries of the County of Essex.
*362 3. All applicants for positions and employments in the classified service of the County of Essex shall be bona fide residents of the County at the time of the closing date following the announcement of examination by the Civil Service Commission; provided, however, that if the Commission, after ample advertisement, determines that an insufficient number of qualified residents exists for available positions or employments in the County of Essex, it may open eligibility lists for positions and employments to qualified non-residents.
4. All non-residents subsequently appointed to positions or employments in the County of Essex shall become bona fide residents of the County within one year of their appointment, except as otherwise provided by paragraphs 7 and 8 of this resolution.
5. The County of Essex shall give preference in promotion to officers and employees who are bona fide residents of the County. When promotions are based upon merit as determined by suitable promotion tests or other objective criteria. [A] [sic] resident shall be given preference over a non-resident in any instance when all other measurable criteria are equal. Provided further, however, any officer or employee promoted to a supervisory "unclassified" capacity who at the time of passage of this resolution was not a bona fide resident of the County of Essex shall be required as a condition of said promotion to establish a bona fide residence in the County within six months from the date of said promotion. The preference granted by this section shall in no way diminish, reduce, or affect the preference granted pursuant to any other provision of the law.
6. The responsibility and duty to enforce this resolution shall be with the County Supervisor or County Executive, or his designee, as the case may be. The failure of any employee, hired after the effective date of this resolution, to maintain a bona fide residence in the County of Essex shall be cause for removal or discharge form service. In the event such employee fails to *363 maintain a bona fide residence in the County, the enforcing authority shall notify said employee that failure again to take up bona fide residency in the County, within six months of such notification, will result in removal or discharge from service. Such removal or discharge shall have the right to such appeals as are available pursuant to law.
7. Where the appointing authority shall determine that there cannot be recruited a sufficient number of qualified residents for available specific positions or employments, the appointing authority shall advertise for other qualified applicants. The hiring authority shall thereupon classify all qualified applicants for such positions or employments in the following manner:
(a) Other residents of contiguous counties.
(b) Other residents of the State.
(c) All other qualified applicants.
The preference established by this section shall in no way diminish, reduce or affect the preferences granted pursuant to any other provisions of the law.
Any employee hired pursuant to this section shall be required, as a condition of continued employment, to establish a bona fide residence in the County.
8. Where the hiring authority shall determine that there are certain specific positions or employments, requiring special talents or skills which are necessary for the operations of the County and which are not likely to be found among residents of the County, such positions or employments so determined shall be filled without reference to residency.
9. Should any portion of this resolution be declared illegal or invalid by any court of competent jurisdiction, the remainder of said resolution shall remain in full force and effect, the provisions thereof being fully severable.
10. All prior resolutions or parts thereof inconsistent with the provisions of this resolution are hereby repealed as to such inconsistency only; and, be it further
*364 RESOLVED, that this resolutions shall take effect upon passage of the same; and, be it further
RESOLVED, that a copy of this resolution be forwarded to all of the autonomous agencies of the County of Essex to indicate the intent of this Board; and, be it further
RESOLVED, that a copy of this resolution shall be served upon the Secretary of the Civil Service Commission. (emphasis added).