723 A.2d 127

NEWARK COUNCIL NO. 21, NJCSA, IFPTE, AFL–CIO, GLORIA BYRD, PATRICIA SERMON, NASEEM MARVI,[1] JUANITA REED, AND MIRIAM ZIMUTO, PLAINTIFFS-APPELLANTS, AND GERARD BARROS, LOURDES BERNARDINO, THILITA BROWN ADAMSON, SHELLEY CANNON, GLADYS DANCY, ALVA DRUITT, FRANCES ENGLISH, PATRICIA GREY, JAMES GRIFFIN, ANGIE L. JONES, LAVERNE LAND, MILDRED SIMPSON, ROBERT MARCELA, ALESIA RAINES, JANE CANTER, SANDRA LEE–WALTON, MENGTING LIANG, INNA LOKSHINA, VENERA NAKHIMOVSKY, BERNICE WEST, EDWARD LAMBERT, MARGARET LEGGETT, CONSTANCE KRATT, RUTH HILL, CHRISTOPHER GRANT, EVELYN DAVIS GRANT, EVELYN HICKS, CARLA POTTER, FELIX ROSARIO, MARCIA SCHOLMASTER, LENORE SUTTON, JEAN THOMPSON, MARSHA MCGOWAN, DARRYL SAUNDERS, JAMILA BEMBRY, JOHN DA SILVA, BASIL FRANKLIN, ELAINE MOORE, ARLENE SMITH, REGINA BAYLEY, EMILIO CRUZ, LISA HAMLETTE, RONNIE JOHNSON, LARRY LAWSON, EDWIN WAY, DOROTHY THOMPSON, DEBORAH ODOM, MICHELLE PORTEE, ELYZE MINTER, MAE RUTH BLUE, IVAN BURGOS, JEROME MIGHTY, AND ALEX KOSHY, PLAINTIFFS, v. SHARPE JAMES, MAYOR OF THE CITY OF NEWARK, AND CITY OF NEWARK, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 15, 1998—Decided February 11, 1999.

---

[1] Incorrectly designated as "Nasheem Marvi."

Before Judges PRESSLER, BROCHIN, and KLEINER.

*Stacy B. Rosenberg*, argued the cause for appellants (*Fox and Fox*, attorneys; *Craig S. Gumpel* and *Ms. Rosenberg*, of counsel and on the brief; *Matthew M. Collins*, on the brief).

*Richee Lori Smith*, argued the cause for respondents (*Michelle Hollar–Gregory*, Corporation Counsel, attorney; *Joanne Y. Watson*, First Assistant Corporation Counsel, on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

Pursuant to a verified complaint filed September 18, 1996, plaintiffs, fifty-eight employees of the City of Newark and their collective bargaining representative, Newark Council No. 21, NJCSA, IFPTE, AFL–CIO, sought and were issued an order to show cause seeking to enjoin defendants, Mayor Sharpe James and the City of Newark (collectively "defendants" or "City") from: (1) enforcing the City's residency ordinance against the named plaintiffs who were hired prior to September 1, 1996; (2) requiring the named plaintiffs who live outside of the City of Newark to establish residences within the City of Newark; and (3) initiating,

processing, or completing any termination or disciplinary proceedings against the named plaintiffs who were hired prior to September 1, 1996, and who did not live in the City of Newark.

Plaintiffs' verified nine count complaint sought in the *ad damnum* clause in count one the following:

(a) Declaring that the Residency Ordinance cannot be retroactively enforced due to the City's studied policy of non-enforcement;

(b) Enjoining defendants from enforcing the Residency Ordinance;

(c) Awarding plaintiffs attorney's fees, costs and disbursements; and

(d) Awarding plaintiffs such further relief as this court deems just and proper.[2]

It is clear from the plaintiffs' verified complaint, from plaintiffs' subsequent pleadings, and from the colloquy between the trial judge and counsel during all pre-trial proceedings and at the subsequent three-day bench trial commencing April 7, 1997, that this litigation focused solely upon the enforcement of the residency ordinance, City Ordinance 2:14–1, as to each individual plaintiff.[3] Plaintiffs' complaint did not seek to declare void, on federal or state constitutional grounds or otherwise, the validity of City Ordinance 2:14–1.

As discussed hereafter, ultimately the trial judge, following the trial, issued a written opinion, memorialized in a judgment dated June 10, 1997, dismissing plaintiffs' complaint, thus permitting

---

[2] The same ultimate relief was demanded in the remaining eight counts of plaintiffs' verified complaint. Each additional count delineated a basis for the requested ultimate relief: estoppel (count two); alleged violation of 42 *U.S.C.* §1983, the First and Fourteenth Amendments of the United States Constitution, and Article 1, ¶ 1 of the New Jersey Constitution on due process grounds (count three), and on equal protection grounds (count six); waiver (count four); laches (count five); an alleged violation of *N.J.S.A.* 40A:9–1.5 (count seven); an alleged violation of *N.J.S.A.* 40:48–1 and *N.J.S.A.* 40A:9–1.3 (count eight); and an alleged violation of *N.J.S.A.* 34:13A–5.4a(1) and (5) (count nine).

[3] As of the date of trial there were only five individual plaintiffs. Some of the other initial fifty-eight individual plaintiffs had their complaints transferred for administrative disposition before the Merit Board, some moved into the City, and the remainder left their positions with the City. Voluntary stipulations of dismissal were filed on behalf of those individual plaintiff employees in the latter two categories.

Newark to enforce its residency ordinance as to the individual plaintiffs.[4] The trial judge correctly identified that plaintiffs' burden was to prove that the City had a studied policy of non-enforcement of its residency ordinance against persons hired prior to September 1, 1996. As we note hereafter, as of the date of this trial, April 3, 1997, of the approximately 4500 City employees, approximately 2000 were affected by the residency requirement.[5]

The primary thrust of the judge's decision may be gleaned from a small portion of his lengthy opinion:

Plaintiffs urge that, as a result of this Court's decision in *CWA v. Treffinger*, 291 *N.J.Super.* 336, 677 A.2d 295 (Law Div.1996), Newark is estopped to enforce its residency requirement against the five remaining plaintiffs because Newark had official knowledge that the plaintiffs were not residents at the time they became employees of Newark, or in the case of Simons was a resident of Newark, but moved out of Newark in 1989, and Newark did nothing until 1996. Plaintiffs misconstrue the decision in *CWA vs. Treffinger*. In that case, the allegation was that the Essex County Board of Chosen Freeholders (Board) adopted a resolution on September 14, 1978 requiring all employees of Essex County to be residents of the County. On January 4, 1996, the County Executive issued an executive order declaring the County's intention to enforce the residency requirement contained in the resolution adopted by the Board. On the plaintiffs applications for a preliminary injunction, the Court said:

This record clearly indicates the County's official knowledge of violations of the residency requirement. *The County has failed to set forth any evidence of a single attempt to enforce the residency requirement from September of 1978 to January of 1996. Based on the foregoing, the plaintiffs at this stage in the proceedings have shown a reasonable probability of ultimate success on the merits to estop the County from enforcing the residency requirement.* (emphasis added).

[291 *N.J.Super.* at 360, 677 A.2d 295.]

Thus, a critical factor in the *CWA v. Treffinger* case was that there was not one instance of enforcement of the residency ordinance from 1978 to 1996. *In the present case, the record is replete with evidence of enforcement by the city of its residency ordinance either by termination of employees or by granting waivers to non-resident employees. The fact that Newark periodically entered into a cam-*

---

[4] In a separate application, plaintiffs sought a stay of the June 10, 1997 order pending appeal. On July 8, 1997, the trial judge entered an order staying enforcement of the June 10, 1997 order.

[5] These statistics are discussed in Part II of this opinion. As noted in that section, 2500 employees of the City are exempt from the residency ordinance requirement by virtue of an exception for police and fire department employees.

.

*paign to enforce its residency ordinance does not detract from its efforts nor does it constitute a ground for estoppel against Newark.*
[ (emphasis added).]

The single reason for the judge's decision dismissing plaintiffs' complaint was the evidence of instances where the residency ordinance had been enforced by defendants, thus permitting his conclusion that plaintiffs' complaint was distinguishable from the complaint in *Treffinger* where the County was unable to set forth "*any* evidence of a single attempt to enforce the residence requirement." 291 *N.J.Super.* at 360, 677 *A.*2d 295. We agree with this conclusion and affirm.

We have thoroughly canvassed the record on appeal with particular emphasis on the appendices filed by both parties. Our review clearly allows the conclusion that prior to 1993 there were numerous instances where the City communicated with its employees seeking information respecting an employee's place of residence or seeking to confirm that an employee had in fact moved into the City following the date employment commenced. We do discern some laxity in the City's strict enforcement of its residency ordinance between October 1993—the month plaintiff Byrd was hired—and the City's general announcement of strict enforcement in January 1996. This laxity is evidenced by the City's failure to strictly enforce the residency ordinance in its employment of each of the five plaintiffs.[6] Yet, the record does demonstrate that the ordinance was not totally ignored during that same period. This is best illustrated by the inclusion of a residency affidavit within the documents completed by every new City employee, the reference to the residency ordinance within employee handbooks intended to be disseminated to all new employees, and the reference

---

[6] The trial judge fully discussed the employment record of each plaintiff. We find no reason to repeat those findings as we conclude that the salient facts pertinent to each plaintiff were properly considered by the judge in dismissing plaintiffs' complaint. Suffice it to say, the record amply demonstrates that each plaintiff knew, prior to January 1996, that the City had a residency ordinance, that each knew that she was expected to reside in Newark or, in the alternative, obtain a written waiver pursuant to the ordinance.

to the residency ordinance in a slide presentation presented as part of an orientation program available to new employees.

It is evident from the record that although the City may have been lax in strictly enforcing its residency ordinance, the City certainly did not engage in a studied policy of non-enforcement. We cannot conclude that the negligible exceptions exemplified by the individual experiences of the plaintiffs constitutes sufficient evidence that defendant engaged in a studied policy of non-enforcement as discussed in *Treffinger*. Accordingly, we affirm for the reasons articulated by the trial judge in his written opinion of May 15, 1997. We add these additional comments to highlight some of the salient reasons which guide our decision to affirm.

I

On November 17, 1975, the City of Newark adopted a municipal residency ordinance requiring all City employees thereafter hired to reside in the City. The ordinance provides, in pertinent part:

All officers and employees of the City who shall hereafter become employees of the City are hereby required as a condition of their continued employment to have their place of abode in the City and to be bona fide residents therein, except as otherwise provided by the charter. . . .

The Director of any department or the Mayor or City Clerk is hereby authorized in his discretion, for good cause shown, to permit any officer or employee of the City in his respective department or office to remain in the employ of the City without complying with the provisions hereof, where:

(a) The health of any officer or employee necessitated residence outside to the City limits;

(b) The nature of the employment is such as to require residence outside of the City limits;

(c) Special talent or technique which is necessary for the operation of government not found among Newark residents exists justifying residence outside of the City limits.

Failure of any officer or employee to comply with this section shall be cause for his removal or discharge from the City service.[7]

[Newark, N.J., Rev. Ordinance 2:14–1.]

---

[7] Although a referendum was passed on November 2, 1976, providing that the residency ordinance would have a prospective effect applicable to new employees hired after November 2, 1976, the referendum was never codified by the

## II

The trial judge summarized the trial testimony of each individual plaintiff. The only other witness presented by plaintiffs at trial was Michael A. James. James was at that time the president of Newark Council No. 21 which represents "[all] white collar workers and some professional employees of the City. of Newark." James was then employed as the Executive Assistant to the City Clerk.

On direct examination, James testified:

---

City. However, as a result of the referendum, the following Public Notice was issued by the City Clerk:

*PUBLIC NOTICE*

The Municipal Council of the City of Newark, New Jersey on November 17, 1975 reconsidered an ordinance entitled, "ORDINANCE TO AMEND CHAPTER 14, PERSONNEL PRACTICES AND POLICIES, OF TITLE 2, ADMINISTRATION, OF THE REVISED ORDINANCES OF THE CITY OF NEWARK, NEW JERSEY, 1966, AS AMENDED AND SUPPLEMENTED (RESIDENCY REQUIREMENTS MODIFIED)" which was rejected by the Mayor on May 23, 1975 which rejection was overridden by the Municipal Council on November 17, 1975.

A Petition was filed with me requesting that the question

"Shall the City of Newark adopt an amendment to its residency requirement for municipal officers and employees which would make the residency requirement prospective only after the date of this referendum and would exempt from the residence requirement employees possessing special talents or techniques necessary for operation of government"

be submitted by referendum to the voters of the City of Newark. Such referendum was submitted to the voters of the City at the General Election held November 2, 1976. The results of that referendum as certified by me were:

| | |
|---|---|
| 18601 | Yes |
| 18362 | No |

Therefore, the "ORDINANCE TO AMEND CHAPTER 14, PERSONNEL PRACTICES AND POLICIES, OF TITLE 2, ADMINISTRATION, OF THE REVISED ORDINANCES OF THE CITY OF NEWARK, NEW JERSEY, 1966, AS AMENDED AND SUPPLEMENTED (RESIDENCY REQUIREMENTS MODIFIED)" reconsidered and adopted by the Municipal Council on November 1976 is in full force and effect.

Q. Mr. James, do you know the approximate number of employees in the City of Newark?

A. It's approximately about 44–4500.

Q. Out of those 4500, how many of them are police and fire?

A. Approximately 2500.

Q. Now are the police and fire exempt from the residency requirement?

A. Yes.

Q. Now out of the 2,000 employees that are not police and fire, approximately how many of those are grandfathered, meaning that they were hired prior to November 2, 1976?

A. I don't know all of them, but I remember that we came up with, from trying to gather those employees who are still with the City, that there's approximately 100–150 of them.

Q. So out of the approximately 1850 employees that are subject to the residency requirement, how many of those reside outside the city?

A. About 200.

Q. Now, out of the 200 that reside outside of the City, approximately how many of those are not being terminated for violating the residency requirement?

A. Close to 100.

Q. Now, out of the approximate 100 employees that are not being terminated for violating the residency requirement, how many of those are provisional employees?

A. In our union, there are approximately 35–40 of them.

Q. That are not being terminated?

A. No, excuse me, no. Out of the provisionals, I would say about 90 of them.

Neither additional direct testimony nor cross-examination elicited an explanation why approximately 100 of the approximate 200 employees residing outside the City were not notified of the City's intention to terminate their employment.[8]

## III

The primary witness for the defense was Glenn Grant, the City's Business Administrator.[9] Grant testified to the City's

FRANK D'ASCENSIO
City Clerk

[8] A partial explanation may be inferred from the testimony of Glenn Grant, a witness for the defendant, discussed *infra*.

[9] Defendant also presented the testimony of John D'Auria, the City's Personnel Director.

efforts to enforce the residency ordinance following the decision in
*Trainor v. City of Newark*, 145 *N.J.Super.* 466, 368 *A*.2d 381
(App.Div.1976), *certif. denied*, 74 *N.J.* 255, 377 *A*.2d 661 (1977).

Grant testified that, on at least three occasions, in 1989, 1991,
and 1993, each City employee was notified by a statement on their
individual City paycheck of the residency requirement to the effect
that all "employees hired after November 2, 1976 must maintain
residence in the City."

Prior to February 23, 1996, the residency ordinance provided
three classifications of employees who were entitled to apply for a
waiver of the residency requirement. Although on February 23,
1996, the Mayor delegated his authority to grant or deny waiver
applications to the business administrator, the City honored all
waivers which had been granted prior to that date. Grant testi-
fied that after February 23, 1996, in certain instances he granted
waiver applications and in other instances denied waiver applica-
tions. The judge ultimately concluded as part of his findings of
fact that the existence of a waiver policy and the denial or grant of
individual waivers was one indicia of the City's enforcement of the
residency ordinance, both prior to and after January 1996.

On May 24, 1996, Grant compiled a list of twenty-one employees
in each City department who had previously received a written
waiver or a conditional written waiver and a list of 100 employees
who had been identified as non-residents of the City who had not
received a waiver. Each department head received a communica-
tion from Grant specifically identifying those employees in his/her
department identified in each category. Each department head
was directed to notify those identified employees who had not, as
of that date, complied with the City residency ordinance that "they
risk losing their job to a qualified Newark resident if they do not
satisfy the residency requirement by September 1, 1996."[10]

---

[10] Grant testified that there are approximately 4300 City employees, that
approximately 2300 are affected by the residency ordinance, and "less than 100"
had been granted waivers which were then in effect.

## IV

As noted, we have thoroughly reviewed the appendices filed on appeal which comprise 574 pages. Many of the documents contained therein are copies of communications between the City and various employees seeking verification of residency or an explanation of an employee's intent to obtain City residency. Although the bulk of these exhibits demonstrate that the City expended a greater effort to assure compliance with the residency ordinance before 1980 and after January 1996, nonetheless the exhibits do establish periodic efforts in the intervening years to enforce the ordinance. In *Kennedy v. City of Newark*, 29 *N.J.* 178, 148 *A.2d* 473 (1959), the Supreme Court, in discussing the validity of residency ordinances noted, "laxity" in enforcement is insufficient to warrant a finding of a "studied policy not to enforce" a residency ordinance. *Id.* at 192, 148 *A.2d* 473. The City's laxity, however, did not give rise to any sustainable complaint by any individual plaintiff. The trial judge correctly dismissed plaintiffs' complaint.

Affirmed.